CASE 88—ACTION TO ENFORCE VENDOR'S LIEN AND CROSS ACTION TO
QUIET TITLE—JANUARY 16.

# American Assn., Limited v. Innis, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT QUIETING TITLE AND DEFENDANT IN THE CROSS ACTION AP-
PEALS. REVERSED.

EQUITY—CLEAN HANDS—LANDS—SURVEYS AND PATENTS—FRAUD—
COLLATERAL ATTACK—PATENT FOR LAND PREVIOUSLY SURVEYED—
QUIETING TITLE—POSSESSION—STATUTE IMPAIRING OBLIGATION OF
CONTRACT.

Held:   1. The maxim that "one who comes into equity must come
with clean hands" means that he must have a clean record with
respect to the transaction with the defendant, and not with re-
spect to any third person; and therefore the maxim can not be
invoked by a junior patentee against a senior patentee on the
ground that the senior patent was obtained by fraud, especially
when he took out his patent with the design to take advantage
of supposed defects in the prior patent; the statute expressly
providing that every patent shall be void so far as it embraces
lands previously entered, surveyed, or patented.

2. The same person may purchase and obtain any number of orders
of the county court for surveys, provided no one of them ex-
ceeds two hundred acres.

3. The validity of a patent can not be inquired into in a collateral
proceeding unless the patent is void upon its face, or has been
issued under such circumstances as the statute declares to be
fraudulent.

4. A patent can not be questioned collaterally on the ground that the
patentees could not acquire title by merely surveying a base line,
and then platting the entries upon this line.

5. Parol evidence is not admissible to show how the survey was
made.

6. Neither the rule that the plaintiff in a suit to quiet title must
show possession to entitle him to relief, nor the rule that a court
of equity can not give affirmative relief to a party whose title
has been obtained by fraud, applies to one who has been brought
into court upon a cross petition, over his protest, and called
upon to set up his title and claim for adjudication by the court;

and the Chancellor, having thus secured jurisdiction, can not be ousted of his jurisdiction by the voluntary dismissal of the cross petition on the eve of the submission of the case.

7. Under Kentucky Statutes, section 4704, providing that "none but vacant land shall be subject to appropriation under this chapter," and "that every entry, survey or patent made or issued under this chapter shall be void so far as it embraces land previously entered, surveyed or patented," a patent to one person for lands previously surveyed by another is void.

8. Under the amendment of December 1, 1873, providing that "one year from the time this revision takes effect is allowed for the return of surveys theretofore made; but if the survey was made six months before the same was deposited with the treasurer the title shall take effect from the date of the patent,"—the fact that a survey made prior to the amendment was not returned within one year after it took effect did not give validity to a patent issued to another for the same land subsequent to such survey, but prior to the issual of a patent thereon, there being no repeal of the provision that every patent for land previously surveyed shall be void.

9. If the amendment to the statute be construed as requiring surveys made prior thereto to be returned within one year thereafter in order to make them operative, it is void as impairing the obligation of contracts, as the rights of the parties were fixed by the law as it existed when the surveys were made.

RICHARDS & ROLAND, ATTORNEYS FOR APPELLANT.


ANALYSIS OF ARGUMENT AND AUTHORITIES CITED.

1. In an equity action to quiet title, no relief can be granted a plaintiff who does not come into court with clean hands. If the title he seeks to quiet is based upon sixty-two patents, which he has obtained by having the county court orders issued in the names of sixty-two fictitious persons; by having the entries and surveys made in the same names; by having these fictitious names forged to assignments to himself of the certificates of surveys; and by procuring the patents to be issued to himself as assignee of such fictitious persons, he can have no standing in a court of equity. 18 Fed. Rep., 273, United States v. Southern Col. C. & T. Co.; Pomeroy's Equity Jurisprudence. sec. 397 to 404; 5 Litt., 302, Anderson v. Philips; 2 B. Mon., 201, Gray v. Gray.

2. In an action *quia timet*, a plaintiff can not have relief where his title is denied, if it is proven to be based upon assignments from fictitious persons and upon grants to him as assignee of

American Assn., Limited v. Innis, &c.

such fictitious persons, since title can not be acquired except through real persons. Revised Statutes of Kentucky, Ch. 102; 18 Fed. Rep., 276, United States v. Southern Col. C. & T. Co.; 1 A. K. Mar., 294, Finley v. Humble.

3. The plaintiff could not appropriate sixty-two tracts of vacant land of two hundreds acres each by merely surveying a base line for the whole, and then platting the separate tracts thereon; and twelve thousand four hundred acres thus platted could not thereafter be surveyed and located so as to oust *bona fide* purchasers in possession under grants from the Commonwealth, since the statutes require each tract to be actually surveyed "in the presence of two disinterested housekeepers as chainmen, whose names must be placed at the bottom of the plat and certificate;" and patents can not be located in any other way. Revised Statutes of Kentucky, Ch. 102.

4. Where land has been either entered, surveyed or patented by one person, a subsequent entry, survey or patent for the same land in the name of another is void. 96 Ky., 95, Terry v. Johnson; 7 B. Mon., 297, Jarboe v. McAtee; 4 Bush., 613, McMillan v. Hutcheson; 19 Ky. Law Rep., 1568, Gibson v. Board; 20 Ky. Lew Rep., 184, Boreing v. Hurst; 20 Ky. Law Rep., 190, Morgan v. Morgan; 20 Ky. Law Rep., 383, Ohio & B. S. W. R. R. Co. v. Wooten.

5. The plaintiff in an action *quia timet* must both allege and prove that he is in possession before he can have the relief sought. He can not have a title "quieted" to land that is in the actual possession of the defendant. Civil Code, sec. 125, sub-sec. 2; Pomeroy's Equity Jurisprudence, sec. 1396; 88 Ky. 101, Kincaid v. McGowan; 12 B. Mon., 494, Armitage v. Wickliffe; 9 Ky. Law Rep., 553, Smith v. Galliff; 12 Ky. Law Rep., 622, Gately v. Wilder; 93 Ky., 121, Whipple v. Earick; 93 Ky., 42, Campbell v. Disney.

6. Where in an action *quia timet* the plaintiff's title and possession are properly alleged in the petition and denied in the answer, if on the trial plaintiff fails to prove his possession the petition should be dismissed; and it is error for the court, upon such failure of proof on the part of the plaintiff, to enter a decree ordering defendant to surrender such possession to plaintiff.

HARRIS & MARSHALL, FOR APPELLEE.

### POINTS AND AUTHORITIES CITED.

1. A patent can not be collaterally attacked for fraud in its procurement or issual. 2 Barbour's Digest, p. 1114, secs. 1, 2, 12, 24; 12 Bush., 381, Marshall v. McDaniel; 81 Ky., 138, Frazier v. Frazier.

A patent may be issued to one person for any number of separate surveys. 9 Bush., 103, Register v. Read.

The equitable rule as to "clean hands" does not refer to transactions between the plaintiff and third persons. Pomeroy's Equity, sec. 397, &c.

2. Evidence tending to show that the surveyor did not run his lines on the ground or mark his corners is incompetent. 4 Bibb, 329, Bledsoe v. Well; 4 Dana, 500, Cain v. Flynn.

3 If a survey is not deposited with the register within six months from its date, the patent based on it gives a title which takes rank only from the date of the patent. Genl. Stats., chap. 109, sec. 3; 90 Ky., 530, Bryant v. Wood.

4. The rule that a plaintiff in a suit to quiet title must show possession is subject to many exceptions, one of which is that the suit is maintainable where neither party is in possession. 5 Bush, 25, Simmons v. McKay; 86 Ky., 245, Kellar v. Stanley; 15 Ky. Law Rep., 211, Bank v. Licking Co.; 15 Ky. Law Rep., 511, Kant v. Hall; 90 Ky., 377, Herr v. Martin.

5 If an action of ejectment is brought in equity and defendant goes to trial without objecting to the jurisdiction or moving to transfer, he can not on appeal object to the forum. 12 Bush, 468, Fraley v. Peters; 90 Ky., 647, Walker v. Leslie.

6. Where both parties by petition and by counterclaim are seeking to quiet title, the defendant can not, by dismissing his counterclaim, deprive the court of jurisdiction. 2 Dana, 11, Harris v. Smith.

OPINION OF THE COURT BY JUDGE BURNAM.

The original suit out of which this litigation grew was begun by C. W. Short in a proceeding against A. A. Arthur to enforce a vendor's lien on a large tract of land situated in Bell county, Ky. Arthur answered, disclaiming any personal interest, and alleged that he purchased the land as agent of the appellant, the American Association, Limited, and asked that it be made a party. He also alleged that Innis and his wife, appellees here, claimed title to a part of the Short land; and he made his answer a cross petition against them, and asked that they be required to set up their claim and interplead with Short, and that the conflicting claims between them be settled.

The Innises demurred to the answer and cross petition of Arthur, and moved to strike out the portion thereof which was made a cross petition against them, which was over-ruled. Thereupon Arthur filed an elaborate amended petition, setting out many grants and patents, covering a large body of land which he alleged that he held as trustee for the American Association, Limited. In this amended petition he alleges that appellees were claiming to be the owners of the land included within and covered by twenty-four of the patents claimed by and held by him as trustee for appellant, a part of which was the same land sold to him by plaintiff Short. He further alleged that the Innis lands constituted and embraced in fact but one boundary of land. The appellees answered that they were the owners and in possession of the land included in the boundary, covered by sixty-one patents issued by the Commonwealth of Kentucky to Edward Innis, numbered from 46,342 to 46,403, inclusive, and recorded in the office of the register of lands; that said land was situated on the waters of Big Yellow creek, in Bell county, Ky., and was purchased from Bell county and surveyed in October, 1871. They further allege that A. A. Arthur, as trustee of the American Association, Limited, and C. W. Short, the plaintiff, were claiming to be the owners of a part of the land covered by these patents, and asked that their title be quieted, and that they be restored to the peaceable possession thereof, making their answer a counterclaim against Arthur and a cross petition against the association. To this the association answered, denying the title and possession of the Innises, asserted its own title, and by cross petition prayed that its own title be quieted. The original suit of Short was tried in the Bell Circuit Court, appealed to this court, and is reported in 97 Ky., 502, (30

S. W., 978). The proceeding on the cross suit between appellant and appellees was prepared for trial, by consent transferred to the Jefferson Circuit Court, submitted to a special judge, and decided by him in January, 1897. The circuit judge sustained the title of the Innises to all of the land called for by their patents which was not covered by older patents owned by the association. There were four tracts of land which were claimed by appellants under patents which were junior in date to those of appellees, but were based upon surveys and entries senior in date to the Innises claim. The chancellor decided that the Innises had a prior claim to these tracts. They are the John Burns patent, No. 54,959, entry and survey dated October 15, 1869, patented June 16, 1881; the Berry Turner patent, No. 54,960, entry and survey dated August 16, 1870, patented June 16, 1881; the J. W. Carroll patent, No. 55,737, entry and survey dated August 30, 1870, patented April 10, 1882; A. Parker patent, No. 53,296, entry and survey dated August 31, 1871, patented May 28, 1877. The entries and surveys to all four of these tracts were prior to October, 1871, when the Innis entries and surveys purported to bear date, but the patents thereto were junior to the patents issued to Innis and wife. Appellants seek to reverse the judgment of the circuit court upon several grounds, viz.: (1) It is contended that appellees Innis and wife do not come into court with clean hands; that the record shows that their sixty-two patents were obtained fraudulently, in that the orders of the county court, and the entries and surveys made pursuant thereto, were in the names of sixty-two fictitious persons, whose names were forged to the assignment of certificates of surveys which were the basis of the patents issued to appellees. (2) That appellees could not acquire title by surveying a

base line, and then platting the tracts on this line, so as to oust subsequent *bona fide* purchasers in possession under grants from the Commonwealth. (3) That the court erred in decreeing to appellees a prior claim to the lands embraced in the patents issued to Burns, Turner, Carroll, and Parker. (4) On the ground that appellees failed to prove possession, and that this cross petition to quiet title should have been dismissed on this ground. We will consider those alleged errors *seriatim*.

1. Should appellees be denied relief because they did not come into court with clean hands? The allegation of the answer of the association which raises this issue is as follows: "The several patents set up in the cross petition, numbering 46,342—46,403, *seriatim* and inclusive, issued to said Innis, are all of them and each of them fraudulent and void, issued without any warrant of law whatever. That said Innis fraudulently procured his name to be stricken from the surveyor's book in each of said surveys, and the name of some fictitious person to be substituted therefor; and afterwards said Innis fraudulently procured transfers to be made of said surveys in the name of and purporting to be by said fictitious persons to said Innis, and procured said patents claimed by him and Jannie Innis herein to be issued to him as assignee of said fictitious persons." In support of this allegation of fraud it is shown that the surveys were originally made in the name of Edward Innis, and the names of other persons substituted. It is also proven by divers citizens of Bell county that they were not acquainted with, and never heard of. these substituted names. It also appears from the evidence of persons employed in the land office that the signatures to the assignments on the back of the certificates that were filed in the land office in forty-nine out of

sixty-two surveys were in the same handwriting. The testimony shows that the Innises resided in New York City; that they employed a man by the name of William Teel to come to Kentucky, and to enter and procure patents to vacant lands in accordance with the law; and that Teel employed divers other persons to assist him in doing the necessary work, among others, John L. Craig; and that the surveys were written by Craig, although Parten, the surveyor of Bell county, actually did the work, and made entry thereof in his book. Appellees were in New York City at this time, and there is no proof that they had personal information as to the steps which were taken by their agents to secure the patents sought to be invalidated. All of the evidence which was introduced for the purpose of impeaching the validity of the patents was excepted to on the ground that a patent can not be collaterally attacked for fraud in its issual. The statute then in force in Kentucky as to the entry of vacant lands is found in chapter 102 of the Revised Statutes, and the portions applicable to this case are as follows:

"Any person who wishes to appropriate any vacant or unappropriated lands may, on application to the county court of the county in which the same lies, and paying therefor such price as the court may allow, not less than five dollars per hundred acres, obtain an order of the court authorizing him to enter and survey any number of acres of such land in the county, not more than two hundred.

"The party obtaining such order may, by entry in the surveyor's book of the county describing the same, appropriate the quantity of land called for in one or more parcels as he may think proper; but no one person shall, under this chapter, enter, survey or cause to be patented, more than two hundred acres of land in any one county.

"The surveyor shall survey the entries in succession in point of time in which the same are made, bounding the same by plainly marked trees, stones or stakes, noting where it binds on a water course or the marked line of another survey, giving names. It shall be in the presence of two disinterested housekeepers as chainmen, whose names must be placed at the bottom of the plat and certificate.

"Such survey must be made within six months from and after the date of entry.

"A plat and certificate of survey must be made out by the surveyor and recorded in his books, and the original thereof, and a copy of the order of the court under which it was made, must be deposited in the register's office within six months after the survey is made.

"A patent may be issued on the survey within three months after a plat and certificate thereof, and a copy of the order, are filed in the register's office.

"When a survey has been carried into grant the register shall write across the face of the order on which the survey was made, 'Satisfied,' and sign his name thereto.

"The legal title to the land shall bear date from the time of making the survey.

"One year from the time this revision takes effect is allowed for returning all surveys theretofore made; but if the survey was made six months before the same was deposited with the register the title shall take effect from the date of the patent.

"None but vacant land shall be subject to appropriation under this chapter. Every entry, survey or patent made or entered under this chapter, shall be void, so far as it embraces lands previously entered, surveyed or patented.

"The register shall receive plats and certificates of sur-

vey after the expiration of the time herein allowed for returning the same; but in such case the legal title shall take effect only from the date of the patent.

"No land shall be subject to appropriation under this chapter that has reverted to the Commonwealth by escheat, or has been defeated for an omission to list the same for taxation, or failing to pay taxes thereon, or which has been once patented, and the title to the same has in any way become vested in the Commonwealth."

The maxim, "One who comes into equity must come with clean hands," is as old as courts of equity, and is the expression of the elementary and fundamental conception of equity jurisprudence; and, although not the source of any distinctive doctrines, it furnishes a most important and even universal rule, affecting the entire administration of equity jurisprudence as a system of remedies and remedial rights. It is based upon conscience and good faith. See Pom. Eq. Jur. section 398. "Broad as the principle is in its operation, it must still be taken with reasonable limitations. It does not apply to every unconscionable act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it in some measure affects the equitable relations subsisting between the two parties, and arising out of the transaction. When a court of equity is applied to for relief, it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in any way affecting the equitable right which he asserts against the defendant, or the relief which he demands." See Id., sec-

tion 399. The rule must be understood to refer to some misconduct in regard to the matter in litigation, of which the opposite party can in good conscience complain in a court of equity. See Snell, Eq., 25. The ordinary illustration of the maxim is found in cases for specific performance of contracts and the equitable remedy applied thereto. For instance, if a contract has been entered into through fraud, or to accomplish any fraudulent purpose, a court of equity will not, at the suit of the fraudulent party, while the agreement is still executory, either compel its execution or decree its cancellation. For instance, where a debtor has conveyed, or in any way transferred, his property for the purpose of defrauding his creditors, and afterwards seeks to set aside the transfer as against the grantee or assignee, and recover back the property, the door of a court of equity is always shut against such claimant. The case put by the trial judge in his opinion is a very pertinent illustration of the rule, viz.: "If a man suing for specific performance is shown to have defrauded the defendant in respect to the contract sued on, the maxim would prevent recovery; but not so if it were shown that the plaintiff, in acquiring title, has defrauded his own vendor, or cheated some third person. 'Clean hands' means a clear record with respect to the transaction with the defendant, and not with respect to any third person." Applying these principles to the facts of this case, the question suggests itself, what fraud have appellees been guilty of in this transaction, so far as appellants are concerned, and of which they may justly complain? In 1871 appellees purchased from the Bell County Court the land in question, and paid therefor the contract price. Bell county does not complain of any fraud in the transaction, and has no ground of complaint. After ob-

taining the patent in due course of law, appellees have in good faith paid all of the taxes which have been assessed against the land, and, so far as this record shows, fully discharged their duties as landholders to the Commonwealth. In construing these provisions of the statute in Register v. Reid, 9 Bush, 103, it was held that the same person could purchase and obtain any number of orders of the county court for surveys, each to be for not exceeding 200 acres, in the face of exactly the same contention that is made here,—that the object of the statute was to invite actual settlement and occupancy of vacant lands, which would be defeated by permitting one person to make more than one entry for the use of one occupant. However much we might be inclined to dissent from the views expressed in that opinion as an original proposition, it must be regarded as settled law, as vast pecuniary transactions have been made, on the faith of it, and any departure therefrom would involve in ruin many innocent purchasers of vacant land taken up exactly as it was in that case and this one. More than eighteen years after the issual of these patents to appellees, appellants bought up most of the old patents embraced in the Innis grants; and with a full knowledge of the location of the Innis patents, having an accurate survey of them by their own engineer, as well as of the older patents purchased by them, they took out blanket patents covering the whole territory previously pre-empted by the Innises, with the design to take advantage of supposed defects in the location and issual of the patents. Under this state of facts appellants can not appeal to the doctrine of "clean hands" in a court of equity for the purpose of canceling patents issued long prior to their claim. Under the statute none but vacant lands could be subjected to appropriation, and

it expressly provides that every entry, survey, or patent should be void so far as it embraced lands previously entered, surveyed, or patented. As said in the case of Kirk v. Williamson, 82 Ky., 163: "The object of this provision is to discourage the nefarious practice of searching out defects in title, and then knowingly entering lands which had been honestly entered, surveyed and paid for by the patentee." Besides, it is settled law that the validity of a patent can not be inquired into in a collateral proceeding, unless the patent is void upon its face, or has been issued under such circumstances as the statute declares to be fraudulent. See. Marshall v. McDaniel, 12 Bush, 382; 2 Barb. Dig. 1114. The case of U. S. v. Southern Colorado Coal & Town Co. (C. C.) 18 Fed. 273, is clearly distinguishable from the one at bar. There the patentees were fictitious; here they are real persons. That was a direct proceeding in the name of the United States Government against the patentee to invalidate the patents on the ground of fraud in their procurement; here the State is not a party at all, and the junior patentees, who make the question, acquired their claim with full knowledge of the pre-existing patents of appellees. Besides, the Federal Statute, which authorized the entry of the lands for which the patents were issued, limited the amount of land which might be pre-empted by one person; while ours, under the construction which has been given it by numerous adjudications, imposes no such limitation.

Another point relied on, is that appellees could not acquire title by merely surveying a base line, and then platting the entries upon this line. This is not a new suggestion. The identical question was raised and construed in the case of Cain v. Flynn, 4 Dana, 499. It was held that

a patent could not be questioned collaterally on this ground or parol evidence admitted to show the fact.

It is next contended that both the statutory and equitable rule of pleading require that a plaintiff in a suit to quiet title must show possession to entitle him to any relief, and that a court of equity can not give affirmative relief to a party whose title has been obtained by fraud. The soundness of these legal propositions can not be denied, but it does not seem to us that they apply to the facts of this case. Appellees did not come into court seeking affirmative relief. They were brought in by appellants over their protest. Appellants alleged that they were in possession of and held legal title to the land in contest, and asked the court to so adjudge, making appellees defendants, and calling upon them to set up their title and claim for adjudication by the court; and they were finally forced to do so. There was no motion on the part of appellants to strike out any part of their cross bill, or limit the range of the investigation. The whole case had been prepared by both sides at great labor and expense; and the chancellor, having acquired jurisdiction of the parties and the subject-matter of the contest, can not be ousted of such jurisdiction by the voluntary dismissal of appellant's cross bill against appellees, after such jurisdiction had fairly attached, on the eve of the submission of the case upon its merits. We are unable to distinguish this case from Harris v. Smith, 2 Dana, 11. In that case Judge Underwood, for the court, said: "A party not in possession can not maintain an original bill to quiet his title or compel the relinquishment of an adverse claim. But where one in possession brings his bill against those from whom he derives title, and makes others from whose claims he apprehends danger, defendants, requiring them to inter-

plead with his vendors, the chancellor will take jurisdiction between these defendants, and settle the whole controversy; and the jurisdiction, having once attached, will not be taken away by the dismissal of the original bill, and a decree upon any remaining cross bill will be effectual." And, commenting upon such practice, said: "It would be of evil tendency to allow such a practice. It might, after the trouble and expense of the preparation, put the rights of a party reluctantly drawn in at stake upon the issue of a new suit. We can not thus allow parties to withdraw from a jurisdiction which is fairly attached." And it necessarily follows that, if the court was right in passing upon the question of title between the parties, it was right in decreeing possession to the successful party.

The judgment of the chancellor sustaining the title of appellees to the four tracts of land which were claimed by appellants under patents which were junior in date to those of appellees, but under surveys and entries which were senior in date to those under which appellees claimed, presents a more serious question. The statute provides viz.: "That none but vacant land shall be subject to appropriation under this chapter; that every entry, survey or patent made or issued under this chapter shall be void so far as it embraces land previously entered, surveyed or patented." There was some apparent conflict in the opinions of this court construing this section of the statute. And in the case of Gibson v. Board (Ky.). (43 S. W., 684), all of the opinions of the court theretofore delivered were considered, and the conclusion reached that the doctrine announced in McMillan's Heirs v. Hutchenson, 4 Bush, 613; Kirk v. Williamson, 82 Ky., 161; Goosling v.

Smith, 90 Ky., 157, (13 S. W., 437); and Davidson v. Coombs, 5 Ky. Law Rep., 812—that every entry, survey or patent upon land which had been previously entered, surveyed or patented was absolutely void, and conferred no title whatever, was adhered to.

Admitting the conclusions reached by the court in these cases, the distinguished counsel for appellees calls our attention to the following subsection of section 4704 of the Kentucky Statutes, which for the first time took effect on December 1, 1873. It is as follows: "One year from the time this revision takes effect is allowed for the return of surveys theretofore made; but if the survey was made six months before the same was deposited with the treasurer, the title shall take effect from the date of the patent." And he claims that in none of the cases heretofore considered by this court was the question suggested by this amendment to the statute raised or decided; that, as all of the entries under which appellants claim were prior in time to the taking effect of this amendment, and as they were not returned within one year from the date thereof, the rights which had accrued under such previous entries and surveys were lost, and the title only took effect from the date of the patent, which, being junior in point of time to the patents of appellees, conferred no title. In response to this contention it may be said that the following subsection to the same section provides, viz.: "That the register may receive plats and certificates of survey after the expiration of the time herein allowed for the return of the same, but in such cases the legal title shall take effect only from the date of the patent." There is no repeal of the subsection which declares that every junior entry, survey or patent of lands previously entered surveyed or patented is void. Taking all of the sections

together, we think that there was no purpose on the part of the Legislature to change the law as it had theretofore existed as to the validity of previous entries and surveys, and that appellees, by reason of their entry, survey and patent of lands which had been previously entered and surveyed by appellants' vendors, acquire no title whatever, but the patents were absolutely void; that the equitable title of appellants became fixed when they complied with the requirements of the statute in making entries and surveys thereof, and which ripened into a complete legal title when the patents were subsequently issued thereon, and were unaffected by subsequent intervening entries, surveys or patents in which the entries and surveys were junior in point of time to those under which they claim. If the amendment to the statute was given the effect claimed for it by appellees, it would be obnoxious to the Constitution of the United States and of the State, prohibiting the passage of laws impairing the obligations of contracts. Under the statute as it existed at the time of the entry and survey of these lands, the plat and certificate were made assignable; and the assignee thereof, by depositing same in the office of the register of lands, was entitled to have a patent issued him. They represented a distinct property interest, and the law as it then existed entered into and formed a distinct part of the contract between them and the State. The rights of the parties were fixed and determined by the law as it then existed. To require the performance on their part of conditions not then required to make the contract operative would be to impair its obligation, and this the Constitution has prohibited. A discussion of this question is found in Robinson v. Magee, 9 Cal., 81, and in the very able opinions of Judges Boyle, Mills and Owsley

in Blair v. Williams, 4 Litt., 35. Grubbs v. Harris, 1 Bibb., 567; Griswold v. Hepburn, 2 Duv., 44; Berry v. Ransdall, 4 Metc., 244. We are of the opinion that the court erred in adjudging the four tracts of land to belong to appellees, and not to appellants. For this reason alone the judgment is reversed, and the cause remanded for a judgment and proceedings consistent with this opinion.