ANNA B. JUNKERSFELD, Appellant, *v.* BANK OF THE MANHATTAN COMPANY, Respondent.

First Department, April 16, 1937.

*Ezra P. Prentice* of counsel [*Charles S. Reilley* with him on the brief; *Prentice, Collins & Dwight,* attorneys], for the appellant.

*Gerhard R. Gerhard* of counsel [*Appleton, Rice & Perrin,* attorneys], for the respondent.

Cohn, J.   The complaint alleges the following:

Plaintiff and Westchester Title and Trust Company (hereinafter referred to as Westchester Trust) on May 12, 1930, qualified as coexecutors of the estate of Peter Junkersfeld, deceased.   At the time of his death the decedent owed to two banks the sum of $32,500, which indebtedness was secured by certain certificates of stock as collateral.   To pay off these loans the executors borrowed $32,500 from Westchester Trust against their promissory note, satisfied the decedent's loans with the proceeds and pledged with Westchester Trust the stock thereby released.

On December 23, 1931, and again on May 6, 1932, Westchester Trust, then being in possession of all the assets of the estate, without the knowledge or consent of its coexecutor, pledged additional securities of the estate to itself as further collateral for its loan.   Westchester Trust, on February 21, 1933, assigned to defendant the aforesaid note of the estate and all of the collateral then securing it.   Plaintiff shortly thereafter notified defendant that the additional securities were the property of the estate and demanded the return thereof, which demand was refused, and defendant unlawfully converted and disposed of the securities to its own use.

By a decree of the Surrogate's Court of Westchester county, entered on June 18, 1936, pursuant to the order of the Appellate Division, Second Department, the coexecutors were surcharged with the value of the securities described in the complaint as of May 12, 1931 (one year after the issuance of letters testamentary). The coexecutors paid the surcharge, and, upon payment thereof,

became subrogated to the rights of the estate to the securities and to any cause of action existing against defendant arising from the conversion by it of the said securities.

Westchester Trust resigned on June 18, 1936, leaving plaintiff as the sole executrix, and the reasonable time for her to repurchase the securities was a reasonable time after June 18, 1936. By reason of the acts complained of, plaintiff has suffered damage in the sum of $32,552.85.

The allegations of the complaint and the opinion of the Appellate Division upon the accounting proceedings in *Matter of Junkersfeld* (244 App. Div. 260), to which plaintiff and defendant were parties, show that the coexecutors were surcharged because they had been adjudged negligent in failing to sell the securities of the estate within one year after they had qualified as executors. Defendant contends that because of this conceded wrongdoing, in which plaintiff participated, she is not entitled to be subrogated to any rights of the estate against defendant for conversion, upon the principle that the doctrine of subrogation will not be enforced as between joint tort feasors and upon the further ground that plaintiff does not come into court with clean hands.

It has been repeatedly held that when a fiduciary is surcharged for making improper investments and has paid the surcharge, the fiduciary becomes the owner of the legal title to the property in which the trust funds were invested and to all rights against third parties in respect to such property to the extent to which the fiduciary has paid the surcharge. (*Matter of McDowell*, 230 N. Y. 601; *Matter of Niles*, 113 id. 547, 554; *Matter of Maitland*, 81 App. Div. 633; affd., 178 N. Y. 612; *Matter of Ryer*, 94 App. Div. 449; affd., 180 N. Y. 532; *Matter of Lyall*, 212 App. Div. 417; *Matter of Poulson*, 155 Misc. 625.) In *Matter of McDowell* (*supra*), where trustees were surcharged for having made improper investments of trust funds, the Court of Appeals ordered that the order of the Appellate Division and decree of the surrogate be modified by inserting a clause providing that on payment of the sum charged against them, the trustees be subrogated to the rights of the estate to the securities in which its funds had been unlawfully invested.

In *Matter of Maitland* (*supra*, at p. 633) this court said: " In other words, when he makes good the trust fund which he has been directed by the decree to do, on the ground that it was an investment which he ought not to have made, he personally takes the place of himself as trustee. The decree, therefore, should be modified to the extent of permitting the appellant to transfer the title to the real estate which he now holds as trustee to himself

personally, also to assign to himself personally the cause of action in the proceedings instituted to set aside the transfers from Pettit to his wife, as well as the judgment for deficiency in the action to foreclose the mortgage." We believe that the principle enunciated in the authorities cited is equally applicable where, as here, a fiduciary is negligent in retaining securities belonging to an estate and where the fiduciary pays the value which the court has found would have been realized had the securities not been improperly retained.

Moreover, it is clear that plaintiff's tortious act was not committed with respect to the matter in relation to which subrogation is claimed. It is true the plaintiff, as executrix, was negligent in retaining for too long a time the securities of the estate, but such conduct cannot be said to have contributed to the alleged conversion by defendant at a later time. The parties are not joint tort feasors for there is no causal relationship between the wrongful act of the plaintiff and the act of defendant.

The doctrine of subrogation is equitable in origin and is governed by considerations of equity. While the maxim that "He who comes into a court of equity must come with clean hands," is a fundamental principle of equitable jurisprudence, this doctrine must be accepted with reasonable limitations. It only applies to some misconduct in regard to the particular transaction under consideration, of which the opposite party can in good conscience complain. (Pomeroy's Equity Jurisprudence [4th ed.], § 399; Bispham's Principles of Equity [11th ed.], at chap. III, § 21; *Swartzlander* v. *Swartzlander*, 219 App. Div. 682, 684; *West* v. *Washburn*, 153 id. 460, 465; *American Association, Ltd.*, v. *Innis*, 109 Ky. 595; 60 S. W. 388; *Ansley* v. *Wilson*, 50 Ga. 418, 422; *Dering* v. *Earl of Winchelsea*, 1 Cox Ch. Cas. 318; *Langdon* v. *Templeton*, 66 Vt. 173; 28 A. 866; *Bateman* v. *Fargason*, 4 Fed. 32.) "The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation." (*City of Chicago* v. *Union Stock Yards & Transit Co.*, 164 Ill. 224; 45 N. E. 430.)

We are of the opinion that as the negligence of the plaintiff here is unconnected with the matter in litigation, such misconduct is not sufficient to bar her from the relief which she seeks. Plaintiff paid into this estate her full share of the surcharge decreed by the surrogate to be the value of the securities as of May 12, 1931. Upon principle and authority, she was entitled to receive her proportionate part of these securities to the extent of the payment of such surcharge. As the securities, according to the allegations of the com-

plaint, were thereafter converted by defendant, in justice and in equity she should be accorded the right to pursue her remedy against the defendant, in place of the estate, to whose rights she is entitled to be subrogated to the extent of the payment by her of the surcharge.

The order dismissing the complaint and the judgment entered thereon should be reversed, with costs to the appellant, and the motion to dismiss the complaint denied, with leave to the defendant to answer within twenty days after service of order upon payment of said costs.

MARTIN, P. J., and O'MALLEY, J., concur; TOWNLEY, J., dissents.

Judgment and order reversed, with costs, and motion denied, with leave to defendant to answer within twenty days after service of order with notice of entry upon payment of said costs.