RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0446-MR

JAMES BURNS                                           APPELLANT

v.             APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE ROBERT B. CONLEY, JUDGE
ACTION NO. 18-CR-00157

COMMONWEALTH OF KENTUCKY                        APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: COMBS, DIXON, AND TAYLOR, JUDGES.

COMBS, JUDGE: Appellant, James T. Burns, appeals from an order of the Greenup Circuit Court revoking his probation and imposing a ten-year sentence. After our review, we vacate and remand.

Burns pled guilty to theft by unlawful taking over five hundred dollars and of being a second-degree persistent felony offender (PFO II). By judgment entered on August 15, 2019, the trial court sentenced Burns to ten years, probated

for a period of five years, to be supervised with the condition that Burns "complete residential treatment at the Star Treatment Facility or similar residential treatment facility."

That treatment provision became complicated. The facility named in the order is located in Ohio. Burns could not be transferred to the residential treatment facility in Ohio as contemplated by the order because he had no place to live in Ohio, and alternate arrangements were made at a facility in Kentucky. At that point, his probation officer learned that Burns had an outstanding warrant from Portsmouth, Scioto County, Ohio. (Trial Record (T.R.) 206, Special Supervision Report dated 10/2/19.) The trial court conducted a hearing on October 17, 2019, on the probation/rehab issues, which we discuss below. The court agreed to release Burns to go to Ohio to resolve the charges there, and then he was to return to Kentucky. Burns set out for Ohio that very day. In fact, **he walked!** But, as Appellant states in his reply brief, the situation "had high potential for failure" when the court released Burns to go to Ohio without any plan to assist him or to anticipate the complexity of the situation he might encounter there.

At the October 17, 2019, hearing on the probation/rehab issues, the probation officer, Amanda Tussey, explained that the situation was "really bizarre." After learning that Burns could not be transferred to the Ohio treatment facility, she got him into a facility in Kentucky; but he did not have a ride to get

there.  They had to arrange for a different facility "where they could get a bus ticket to take him."  In the meantime, Officer Tussey learned of the outstanding warrant in Scioto County, Ohio, which was not "extraditable" in Kentucky.  The attorney for the Commonwealth proposed that the court release Burns and order that he turn himself in to Scioto County, get those charges resolved, and "if they probate him, they can send him to treatment, if they won't then we'll bring him back over here and send him to treatment once he's gotten that warrant taken care of."  The trial court told the parties to put something in writing and "I'll sign it."  Officer Tussey stated that "as soon as he is released by Ohio, whenever that is, then you are to report to us, Probation and Parole, in Kentucky."  When Burns asked if he had to go to Ohio, the court advised that he did and stated, "go over there, get that taken care of, do you what you need to do [*sic*], and then come back here."  The court explained that "then we'll get you into a treatment plan."

Four days later, on October 21, 2019, the trial court signed and entered an Agreed Order Amending Terms of Probation, which provides in relevant part as follows:

> 1.  Defendant shall be released from the Greenup County Detention Center and immediately report to the Scioto County Jail, to self surrender to the warrant issued in Scioto County Court of Common Pleas . . . and answer to the charges lodged against him therein.
>
> 2.  After defendant has been released from the custody of the State of Ohio, he shall immediately return to the

Commonwealth of Kentucky and report to his Probation Officer, Officer Tussey . . . [and] defendant shall thereafter be placed into an inpatient treatment program and shall successfully complete said treatment program.

(T.R. 210-11.)

On October 23, 2019, Officer Tussey filed a Violation of Supervision Report as follows in relevant part:

Absconding
On 10/17/19 James Burns was court ordered to be released and turn himself into [sic] Scioto County, Ohio to take care of his pending Felony case there and once released form [sic] Ohio to immediately report to this Officer and received [sic] a substance abuse assessment and receive an in-patient bed referral. This Officer spoke with Scioto County, Ohio jail staff and they informed this Officer that James Burns had turned himself in on October 17, 2019 and was released on October 21, 2019 on his own recognizance. Subject did not report to his officer as directed. This Officer attempted both numbers listed on PSI and no success. A check of Justice exchanged did not show subject being incarcerated at this time, his whereabouts are unknown.

Failure to seek substance abuse evaluation
James Burns was court ordered to report to Probation and parole immediately upon release from Ohio Jail, he failed to report and obtain a substance abuse assessment as directed.

(T.R. 212-13.)

On October 23, 2019, the Commonwealth's Attorney filed a motion to revoke probation. A bench warrant was issued. On November 5, 2019, Burns turned himself in to the Greenup County Sheriff.

-4-

At the December 12, 2019, revocation hearing, Officer Tussey testified consistently with her report. She explained that Burns did turn himself in, but nonetheless he was arrested. He was released from Scioto County on October 21, 2019, but he did not contact her until November 4, 2019. She believes that the case in Scioto County is still pending. After speaking to the attorney for the Commonwealth, she became aware of the Ohio warrant for failure to appear. (Video Record (V.R.) 12/12/19, 1:55:07-1:57:24.)

Officer Tussey testified that Burns went to Ohio as directed on the very same day (October 17). On November 1, 2019, Officer Tussey's office was contacted by Kim Bentley at a Presbyterian Church in Ohio. She related that Burns had been sleeping on their porch, that they were trying to get him back to Kentucky to turn himself in, and that he had been incarcerated a couple of weeks ago. According to Officer Tussey, her office staff told Ms. Bentley that Burns needed to report immediately. Two days later, Burns called Officer Tussey himself. He was brought back to Kentucky by members of the church. (V.R. 12/12/19; 1:57:34-1:58:18.)

Kim Bentley, who testified on his behalf, is affiliated with the Presbyterian church in Portsmouth, Ohio. She knows Burns because he came to their food pantry and sought assistance with housing and treatment for drug abuse after he was released from Scioto County jail. He had been there a couple of years

before. Ms. Bentley explained that her church does not offer those types of services, but she agreed to help advocate for Burns. At that point, she learned that there was a warrant for his arrest. Ms. Bentley contacted Burns's attorney, and he told her to advise Burns to turn himself in. Ms. Bentley called the parole office on a Friday. Ms. Bentley explained that she was out of town that day, and so she could not get word back to Burns until Monday. Ms. Bentley explained that "we talked with him and he said he would turn himself in and we brought him here the next morning."

Ms. Bentley confirmed that she has lined up a referral for Burns to a residential facility in Ohio that provides drug and alcohol rehabilitation and mental health services. Burns can go there once he resolves a Scioto County warrant for failure to appear there while he was incarcerated in Kentucky. Ms. Bentley also confirmed that the Ohio facility will provide treatment for up to 180 days and will take Burns if he is on probation in Kentucky. The church is willing to help Burns find a place to stay once he has completed the treatment at the facility, which offers job training and placement so that he can afford a place to live. (V.R. 12/12/19, 1:59:04-2:03:43.)

Burns asked if he could speak. The trial court swore him in. Burns explained that on October 17, 2019, he was released and turned himself into Scioto County "the same day, eight and a half hours later upon walking." (V.R. 12/12/19,

2:04:13-2:04:26.)  On October 21, 2019, he was released by Scioto County.  On October 22, 2019, he registered under "intense supervision."  Burns explained that he had to call in seven days a week to a bonding agency and take a urine test "at any given time" every day Monday through Sunday (V.R. 12/12/19, 2:04:29-2:04:45.)  On October 24, 2019, the trial court signed a warrant for his arrest.  Burns testified that he did as he had been told.  As soon as he found out that he had an active warrant in Greenup County, he chose to turn himself in.  (V.R. 12/12/19, 02:04:49-02:05:22.)

> Burns testified that:
>
> I have the order that you signed, it says release upon receipt of order and that's all it says.  Ok.  There was no communication for me to come into the Commonwealth until after the stipulations were taken care of in Scioto County.[1]

 (V.R. 12/12/19, 2:05:35-02:05:42.)

Burns explained that he had a court date on the 8th (in Ohio), that the bonding agency told him that he had to find a place to stay -- without a convicted felon or drug user living there -- thus eliminating everyone he knew in Scioto

---

[1] The video record reflects that Burns was holding and referring to a document, but it is not further identified.  We note that the agreed order modifying probation was not rendered until October 21, 2019. The certificate of service reflects that a copy of the agreed order was served by "hand-delivery or first-class mail" upon Burns c/o the Greenup County Jail and upon the Scioto County Jail on October 21, 2019 -- four days **after** Burns left Kentucky and the same day the Scioto County Jail released him.  It is unclear whether Burns ever actually received that order.

County at the time. And so, he called the Presbyterian church "to make the right choices." (V.R. 12/12/19, 02:05:54-2:06:14.) Burns explained that he was supposed to be sentenced there in Scioto County for a program that was court ordered in the first place, but because of his residency, it was "made to the Commonwealth." (V.R. 12/12/19, 02:06:19-02:06:43.)[2] At that point, the trial judge visibly lost patience, demanding: "Is there ever an end to this testimony?" and ordering Burns to get to the end of it. (V.R. 12/12/19, 2:06:44-02:06:50.) The judge then proceeded to address Burns:

> You know what your problem is? Your hands are too dirty, your hands are too dirty.[3] You got too many things going on in too many different states. You've got too many cases, active cases. Now, I tried to do you a favor and let you leave here to go over there and take care of that, and then come back so we could get this thing resolved, but you don't do that. You go find a place to live and try to get counselling services at this Presbyterian Church instead of coming back here and taking care of your business here. Now I don't, you may have had a good reason, because maybe that's what your bonding agent was telling you over there.

(V.R. 12/12/19, 02:06:57-2:07:39.)

---

[2] This statement is consistent with information related by Officer Tussey at the October 17, 2019, hearing; *i.e.*, that Burns was supposed to go to a program in Ohio originally.

[3] The doctrine of "unclean hands" is a rule of equity jurisprudence and is not applicable to the case before us. *American Ass'n v. Innis*, 109 Ky. 595, 60 S.W. 388, 390 (1901) ("The maxim, 'One who comes into equity must come with clean hands,' is as old as courts of equity, and is the expression of the elementary and fundamental conception of equity jurisprudence[.]").

All of a sudden, the judge loudly slammed his hand on the bench and screamed, "I don't give a damn about your bonding agent over there. I don't care about that." (V.R. 12/12/19, 2:07:40-2:07:44.) The judge then continued:

> All I care about is you taking care of this case in my court per our agreement that you violated. You didn't come back. You were out two weeks, you were out two weeks. You were supposed, when you got released from Ohio, to come back here. That's what you agreed to do. You agreed when they released you from Scioto County, you were going to come back here, we were going to resolve this case, and heck we were even going to run it concurrent with whatever you agreed over there. We were going to run it in the same time, we just wanted to see you get services. But no, you don't do that, you do your own thing, you let someone else tell you what to do, instead of doing what I told you to do. I can't help a guy that won't help himself and agree to do what he agreed to do with me. So I don't give a damn about your Ohio stuff anymore, because you don't give a damn about my stuff.

(V.R. 12/12/19, 2:07:54-2:08:59.) The trial court abruptly revoked Burns's probation and told him to serve his time. The December 12, 2019, docket sheet reflects as follows:

> Rev. Hrg. held. C/W called probation officer – Tussey. Based upon the testimony Ct. finds the Defendant violated the terms of his release by failing to return to Ky. to take care of his case. Ct. ordered Probation revoked & serve original sentence.

(T.R. 223.)

On December 17, 2019, the trial court entered an order revoking probation. The order is largely a form which reflects that it was prepared by the Assistant Commonwealth's Attorney. It provides in relevant part as follows:

> After reviewing the file, hearing arguments of counsel, and being otherwise sufficiently advised the Court finds the defendant committed the following violations of the terms and conditions of probation:
>
> 1. Absconding probation
> 2. Failure to seek substance abuse evaluation.
>
> The Court having considered whether defendant's violations of the terms of probation constitutes a significant risk to prior victims or the community at large, and whether defendant could not be managed in the community, so finds that the defendant constitutes a significant risk to the community at large and cannot be properly managed in the community. The Court further finds that graduated sanctions are inappropriate.

(T.R. 224-25.)

On January 15, 2020, Burns filed a Notice of Appeal to this Court. On appeal, he argues that the trial court erred when it revoked his probation without complying with the mandatory criteria set forth by KRS[4] 439.3106(1). We agree. The statute provides that supervised individuals shall be subject to:

> (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised

---

[4] Kentucky Revised Statutes.

-10-

individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

The statutory requirements are "conditions precedent" to revocation as emphasized

by *Commonwealth v. Andrews*, 448 S.W.3d 773, 777 (Ky. 2014).

> In *Andrews*, the Supreme Court explained that decisions regarding probation revocation lie within the sound discretion of the trial judge. *Id.* at 777. However, . . . **the trial judge must exercise his discretion within the confines of KRS 439.3106**. *Id.* Accordingly, . . . before deciding to incarcerate a probationer for violating the terms of her probation, the trial court **must consider** "[w]hether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community." *Id.* at 780; KRS 439.3106(1). . . .
>
> . . . .
>
> For purposes of review, rather than speculate on whether the court considered KRS 439.3106(1), **we require courts to make specific findings of fact, either written or oral, addressing the statutory criteria**. *McClure v. Commonwealth*, 457 S.W.3d 728, 733-34 (Ky. App. 2015). A requirement that the court make these express findings on the record not only helps ensure reviewability of the court decision, but it also helps ensure that the court's decision was reliable. "Findings are a **prerequisite** to any unfavorable decision and are a minimal requirement of due process of law." *Rasdon v.*

-11-

> *Commonwealth*, 701 S.W.2d 716, 719 (Ky. App. 1986)
> (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756,
> 36 L.Ed.2d 656 (1973)).

*Lainhart v. Commonwealth*, 534 S.W.3d 234, 237-38 (Ky. App. 2017) (emphases added).

In the case before us, the trial court did not make **any** specific written or oral findings of fact addressing the criteria of KRS 439.3106(1) at the revocation hearing. Nor did it do so in its docket sheet order. It only found -- peremptorily, profanely, and dyspeptically -- that Burns had violated the conditions of his probation. It did not even address the fact that he arguably had no copy of its written order after he attempted to comply immediately, rather than four days later when the written order was finally signed.

The findings in the written order revoking probation are not sufficient because they merely repeat the statutory language. As we explained in *Walker v. Commonwealth*, 588 S.W.3d 453, 459 (Ky. App. 2019), such conclusory statements related to the KRS 439.3106(1) criteria are insufficient to "meet the mandatory statutory findings necessary to revoke a defendant's probation." Consequently, "under either an abuse of discretion or palpable error standard of review, the circuit court's decisions must be vacated for full consideration of the statutory criteria and the entry of appropriate findings . . . ." *Id.*

We are not at all convinced that Burns's probation should have been revoked under the facts of this case, but nonetheless we must remand it to the trial court for its required compliance with *Andrews* and KRS 439.3106.

Accordingly, we VACATE the Greenup Circuit Court's Order Revoking Probation and REMAND this case with directions that the trial court properly consider the criteria set forth in KRS 439.3106(1), that it enter specific findings of fact as required by the statute in a written order, and that it conduct itself in a manner that comports with the rules governing proper judicial conduct as to language, demeanor, and dignity of the tribunal.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General
Frankfort, Kentucky