CHIEF JUSTICE HARDIN
delivered the opinion op the court.
This case was submitted to and decided by the circuit court upon an agreed statement of facts, showing that in September, 1871, the appellee, under section 3 of chapter 102 of the Revised Statutes (2 Stanton, 430), purchased from and obtained the order of the Breathitt County Court for two hundred acres of the vacant and unappropriated lands in said county, which he caused to be duly and properly entered in the surveyor’s book of said county; and that entry was, within the time prescribed by the statute, surveyed and located by the surveyor by proper metes and bounds; and that a plat and *104 certificate of the survey, duly made out and recorded by the surveyor, and a copy of the order of the court under which they were made, were deposited in the register’s office within the time prescribed by law, and more than three months before the institution of this suit.
It further appears by said agreement that within six months after said purchase and entry were made by the appellee he made a similar one for two hundred acres more of the vacant lands in said county, for which, in the same manner, he obtained the surveyor’s plat and certificate of survey, which, with a copy of the order of the county court, he also in proper time deposited in the register’s office, and did so more than three months before the commencement of this suit.
Upon the foregoing facts it was contended by the register in the court below, and is now insisted by the attorney-general for him, that, admitting the right of the appellee to have a patent issued to him for his first entry and survey of two hundred acres, it is not lawful for him to have the second grant of two hundred acres, for the alleged reason that by the provisions of the statute referred to the same person can not purchase and obtain the order of the county court for more than one entry of two hundred acres of vacant and unappropriated land.
Said section 3 of chapter 102 (supra), which embraces several subsections which need not be quoted, provides that “any person who wishes to appropriate any vacant and unappropriated lands may, on application to the county court of the county in which the same lies, and paying at such price as the court may allow, not less than five dollars per hundred acres therefor, obtain an order of court authorizing him to enter and survey any number of acres of such land in the county, not less than twenty-five nor more than two hundred.” Does this enactment import a prohibition on each person ap *105 plying for orders for vacant lands from so obtaining authority to enter more than two hundred acres, or merely a restriction of the power of the county courts to authorize any one entry of more than that quantity or less than twenty-five acres? The circuit court, giving to the statute the construction last indicated, awarded the writ of mandamus against the register, and a careful consideration of the question constrains us to concur in that decision.
"While the statute in effect forbids the county courts to sell more than the two hundred acres of land by any one oi’der, it certainly, in providing that “any person” may purchase vacant lands, lays no express restraint on any one from obtaining more than one order, if not for more than two hundred nor less than twenty-five acres; and if the supposed prohibition can be deduced from the statute at all, it must be by implication only.
It is contended for appellant that the object of the statute should be presumed to have been to invite and encourage the actual settlement and occupancy of the vacant lands, which might be frustrated, if not defeated, by permitting a single person to acquire more than would be reasonably necessary for the use of one actual occupant.
But with reference to this very plausible argument it is perhaps sufficient to observe that if such had been the controlling intention of the legislature, they would not likely have provided the means of effectually evading it by enacting, as they did, in the ninth subdivision of said section 3, that “ a plat and certificate of survey shall be assignable, and the assignment thereof shall authorize a patent to issue thereon to the assignee,” thus rendering it easy for any person by arrangement with others to obtain any number of patents to himself. This court knows judicially, moreover, that before the adoption of the Revised Statutes nearly or quite all of the lands of the state of much value for farming purposes had *106 been appropriated, and that the chief value of the residue consisted in the timber and minerals they contained; and it is not certain that the prohibition contended for might not operate to prevent their appropriation for those purposes, and tend to deprive the commonwealth of the revenue which they would yield in the hands of private owners.
But, independent of other considerations, it is not improbable that the legislature intended by the restriction of the statute to prevent as far as possible the conflicts and confusion of boundaries and claims which might arise from including in the same grants large quantities of land within which smaller entries and surveys may have been made, and for which patents may have already issued.
If, however, the meaning of the statute, so far as it involves the question under consideration, is so obscure or doubtful as to requii’e a resort to other tests than those already mentioned for a solution of the- difficulty, much weight is due to the fact that froxn the adoption of the Revised Statutes, over twenty years ago, till this controversy arose the same construction which we adopt has, as we believe, been acquiesced in by the people, and acted upon by that department of the government having official duties to discharge under the law in relation to the appropriation of public lands. It may be said upon high authority that a contemporaxieous is generally the best construction of a statute; and if there is ambiguity in the language, the understandixxg and application of it when the statute first came into operation, saxxctioned by long acquiescence on the part of the legislature and other departments of the government, is the strongest evidence that it has been rightly understood in practice. (Cooley’s Constitutional Limitations, pp. 67-71; Sedgwick on Statutory and Constitutional Law, pp. 251-253.)-
But puttixig all extraneous means of interpretation out of view, and looking to the language of the statute alone *107 for its meaning, we can see no sufficient ground for giving to it a different construction from that adopted by the circuí* court.
Wherefore the judgment is affirmed. Judge Pryor dissenting.