CASE 8.—PROCEEDING BY THE COMMONWEALTH OF KEN-
TUCKY AGAINST W. H. NICKELS AND OTHERS TO
VACATE A PATENT FOR 34,800 ACRES OF LAND
OBTAINED FROM THE LETCHER COUNTY COURT
ON FEBRUARY 28, 1874.—Opinion rendered September
25, 1901.

# W. H. Nickels, &c. v. Commonwealth

Appeal from Letcher Circuit Court.

Judgment for the plaintiff. Defendant appeals.—
Reversed.

1. Vacant Land—Patents Thereon—Surveys Included—Validity
of Patent.—There is no provision of law inhibiting the inclu-
sion of several surveys in one patent, it being settled that
one person might at the same time make two or more sur-
veys, each of 200 acres, at his election, and obtain a patent
thereon, including in one grant as many surveys as the
patentee desired.

2. Treasury Warrant Claims—Patents Thereon—Authority of
Land Office.—Under the act of March 27, 1872, section 3, chap.
2, Revised Statutes of Kentucky, entitled Treasury Warrant
Claims, the register of the land office was authorized to issue
patents to persons who had surveyed or might survey vacant
lands for any number of acres so surveyed.

3. Survey—Including Prior Grants—Validity of Patent Thereon.
—The fact that a survey of land containing 34,800 acres,
included prior grants, which was known to the patentee, does
not affect the validity of the patent as to the land therein not
previously patented, but as to the land therein which had
been previously patented it passed no title.

W. S. PRYOR, D. D. FIELDS and S. B. DISHMAN for appellants.

1. The patent under which appellants Altemus, McGeorge and
Pepper claim cannot be impeached by evidence de hors the
patent; they being bona fide purchasers for valuable consideration

from the patentee. (Dembitz on Land Title, vol. 1, 503.)

2. The prtent sought to be vacated is well defined, accurately surveyed, certain as to location, lines and cor~ers and makes no exclusions, and only two questions can arise in this case on the record and agreed state of facts: (1) Was the survey and patent authorized by law? (2) If so, is there anything on the face of the patent that renders it void?

3. To right a wrong, redress a grievance or do justice, the courts are at all times open. The only thing demanded by appellees in this case, in the name of the Commonwealth, is to absolutely take from appellants a thing they have in good faith acquired and paid tor, and give it to the appellees—not as a matter of right or justice, but as a matter of conquest.

4. The appellees, "we the good citizens of Letcher county," demand the carcass shall be divided among us.

W. H. HOLT for appellee.

While it is true when this survey was made, a person could obtain more tnan one of 200 acres, but there had to be a survey of each, the object being to locate the land—make it more definite—but the law did not permit a blanket survey. If one could have a paper survey (as this one is) of 34,800 acres, hecould have one for a whole county or ecen a state. If in a certain event or upon a certain state of case a patent shall be void, you may show it de hors the patent. If the statute denounces it as void in a certain state of case, inquiry as to it may be made by parol. Each 200 acres required by law a survey, and any patent not in conformity thereto was void. Altemus, etc., were bound to take notice of it; moreover Nickels is an appellant. Again, the Commonwealth may show fraud, or what is tantamount to it. All knew thac in 1873 there was no such body of vacant land as 34,800 acres. The patent was against public policy, calculated to stir up strife and litigation. What was public policy here as to lands in 1800, was not in 1873. It changes with time and development. Large grants in an early day to one person, were not contrary to our interests; speculative spirit was not then abroad; the land was soon sold off in smaller portions and came to the actual settler as if the state had granted it to him; but for several years prior to and about 1873 the legislation shows public policy was against land grabs, and blanket patents, and the quantity of a grant and number to a person were restricted, and a patent sweeping in its lines—the claimants under it never in possession, including a hundred other grants and homes, certain to stir up untold strife and litigation, should be held void.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On February 28, 1874, the Commonwealth of Kentucky issued to W. H. Nickels a patent for 34,800 acres of land by virtue of a survey of the land made by Nickels on May 16, 1873. The patent was based on 174 warrants of two hundred acres each obtained by the patentee from the Letcher county court and for which he paid the price fixed by law. A portion of the boundary lines of the survey were established by marked trees plainly marked; the beginning point of the patent is at a point then well known by the citizens of the county and was well described in the survey; so were other marked corners. The survey embraced large bodies of vacant lands and also lands that had been previously patented; the location of the survey is certain and definite and by a survey of the patent all the older surveys may be located. Nickels, at the time, resided in Letcher county and continued to reside there for fifteen years afterwards, within four miles of the land; on February 3, 1882, he sold and conveyed the entire tract covered by the patent to J. B. Altemus and W. D. Jones, who resided in Philadelphia, Pa., and purchased the lands for $34,800, which they then paid in good faith, believing that the patent was valid and that very little of it had been previously patented and that most of this had been bought up by Nickels; the State has every year since the issual of the patent collected from Nickels and his vendees taxes on this land, the amount so paid amounting to at least $2,000.00; Letcher county has also since 1885 collected an ad valorem tax of a thousand dollars and in addition to this, taxes have been levied by some

of the school districts within the survey.  About the
year 1883 or 1884, Altemus and Jones discovered there
were older patents inside of the survey and employed
competent surveyors to locate these older patents
which Nickels had not bought up, offering to trace
the citizens lines so that they might know what land
belonged to them.  Many of the citizens accepted this
offer and Altemus and Jones made an outlay of over
$3,000.00 in doing the work and after that only listed
for taxation the quantity of land in the survey after
excluding the older patents.  On September 8, 1895,
this suit was brought in the name of the Common-
wealth by certain citizens of Letcher county to cancel
the patent issued to Nickels; the majority of these
persons are interested in surveys junior to the Nickels
patent for part of the same land 'which they expect to
hold good if that patent is annulled; the interest they
have in these surveys was the inducement which
caused the institution and prosecution of the suit.
They had knowledge of the facts before they made
their surveys and knew that the vendees of Nickels
did not claim any land which had been previously
entered, surveyed or patented or held adversely for
fifteen years.  Altemus and Jones have bought up
some of the older patents in addition to what Nickels
bought.  Nickels did not have the land surveyed· in
blocks of two hundred acres each; he simply had a
large survey made covering the land and afterwards
had the plot marked off by the surveyor so as to show
the same as though the land had been actually sur-
veyed in blocks of two hundred acres each.  Altemus
and Jones have not been in actual possession under
the patent, and some of the citizens living inside of it
have at all times disregarded it on the idea that it was
invalid and so believing have made the junior surveys,

above referred to, and are now occupying them as their homes.

The court below annulled the patent. It is insisted that this judgment is right for the following reasons:

1. The survey purports to have been made in blocks of two hundred acres each, when in fact the entire boundary was surveyed and the plot was made by running a base line and plotting off the land in blocks of two hundred acres.

2. There was no notice to the older patentees or those holding older entries.

3. The patentee knew that a large part of the land was covered by older grants and none of these are excluded or mentioned in the patent, the fact being that only about eight thousand acres of the land was then in fact vacant.

In American Association, Limited, v. Innis, 22 Ky. Law Rep. 1196, 60 S. W. 388, and in Uhl v. Reynolds, Register, decided at this term, we fully considered most of these questions. In those cases the previous decisions of the court are collected and we said then, however much we might be inclined as an original proposition to question the correctness of the rule heretofore established, we can not depart from it after it has been acted on for so many years and the title to large bodies of land have been bought and sold upon the faith of these decisions. To do so would be to depart from the rule of stare decisis.

The arguments that are so earnestly pressed upon us by appellee's distinguished counsel and elaborated in the dissenting opinion of Judge O'Rear in the case of Uhl v. Reynolds, were forcibly stated by Judge Pryor in his dissenting opinion in Register v. Read, 72 Ky. 103, and for us now to take this view and hold a patent issuing for more than two hundred acres

to be void would be for us now substantially to adopt the rule urged by Judge Pryor in that dissenting opinion, notwithstanding the fact that this court has sustained patents under this statute, similar to the one before us on the authority of the majority opinion in that case.

There is no provision of law inhibiting the inclusion of several surveys in one patent; it being settled that one person might at the same time make two surveys each of two hundred acres or more at his election, the land office issued patents upon these surveys including in one grant as many surveys as were desired at the request of the patentee. This practice followed the ruling of the United States Supreme Court by Chief Justice Marshall in Polk's Lessee v. Wendell, 9 Cranch 87, which was approved in Smelting Co. v. Kemp, 104 U. S. 648. When there was no statute for bidding this and such patents have been recognized by this court, after large sums of money have been invested on the faith of this practice of the land office and these decisions, it would be, in our judgment, a departure from well settled legal principles for us now to declare such patents invalid. Besides, this patent comes within an amendatory act which was evidently made for the purpose of inducing the taking up of the mountainous and timbered lands of the State in large areas in this way.

The act of March 27, 1872, provides: "Section 3, chapter 2, Revised Statutes, entitled Treasury Warrant Claims, be and the same is so amended as to authorize the register of the land office to issue patents to persons who have surveyed or may hereafter survey vacant and unappropriated lands in this Commonwealth for any number of acres so surveyed and appropriated: Provided, that this act shall only apply

to the counties of Greenup, Lawrence, Pike, Laurel, Letcher and Clay.''

The patent before us was issued under this act. It in express terms authorized the register of the land office to issue patents to persons who had surveyed or might thereafter survey vacant lands for any number of acres so surveyed. To hold that only two hundred acres could be surveyed or only two hundred acres embraced in one patent under this act would be to deny proper effect to its express terms, after it had been acted upon by the authorities of the State, and the patent issued under its authority by the State has been purchased in good faith by those who gave credit to the official act of the State, as shown by the patent issued under its seal. Section 3 of the original act authorized any one to enter and survey, ''any number of acres of such land in the county not less than twenty-five nor more than two hundred.'' The amendment authorizing surveys ''for any number of acres'' was necessarily intended to remove the limit as to the quantity of land that might be embraced in one survey, for it made no other change in the existing law.

We, therefore, conclude that the patent is not void because it covered 34,800 acres of land. There are no exclusions in the patent; it is entirely silent as to prior grants. The question does not arise, therefore, in this case as to the effect of the exclusion in a patent of prior grants which are not identified. The fact that the surveyor who made the survey and the patentee who obtained the grant knew that the patent embraced land that was covered by prior grants can not affect the validity of the patent. A patent is nothing more nor less than a deed from the State, and an innocent purchaser of land covered by a patent stands

just as an innocent purchaser of land from one who holds title by deed. The statute does not declare a patent embracing land previously patented to be altogether void. It only declares it void in so far as it embraces older grants or surveys. This is well settled. (Hall v. Martin 89 Ky. 9, 11 Ky. Law Rep. 241; Mansell v. Israel, 6 Ky. 510, 1 Dembitz on Land Titles, 503.)

We conclude, therefore, that the patent is not invalid as to the lands embraced in it which were vacant or unappropriated at the time of the survey. As to all lands covered by it that were not then vacant and unappropriated, it, of course, passed no title. The record is not so presented as to enable us to determine what lands passed to appellants under it or to determine anything as to what prior grants existed or any of the rights of occupying claimants to the land. The only question before us is as to the validity of the patent for such land as was vacant and subject to appropriation. To this extent we are of opinion that the patent is valid and that the court below erred in adjudging it void.

Judgment reversed and cause remanded, with directions to the court below to enter a judgment dismissing the petition.

The whole court sitting. JUDGE O'REAR dissenting.

DISSENTING OPINION BY JUDGE O'REAR.

The majority opinion in this case is in line with that of Uhl, etc., v. Reynolds, Register of the Land Office, etc., decided at this term of court, and as I have dissented in that case, the same reasons may be referred to as a part of the basis for this dissent.

In this case it appears that there was never an act-

ual survey of the land embraced in the patent to appellant's vendor, the patentee. There was never an entry of the respective warrants of 200 acres each. The boundary embraced in the general patent was inhabited by more than two hundred citizens of Letcher county, who come under the head of occupying claimants, and whose rights had been fixed by statute, which could not and ought not to be divested by a disregard of the law. The agreed statement of facts shows, that the patentee and the surveyor both knew of the situation with reference to these people, and disregarded their claims, undoubtedly for the purpose of making their patent more presentable on its face, that it might be disposed of to better advantage to purchasers abroad. The statute disregarded, section 2, chapter 109, General Statutes of Kentucky, provides:

"An actual settler of any vacant or unappropriated land shall have a pre-emption right to any number of acres, not exceeding one hundred, to be laid off as nearly as possible in a square, his improvements in the center. Before any other person shall locate the same, three months' notice of intention to do so must be given to the actual settler, in which notice the land intended to be taken up or appropriated must be described." This notice was not given.

The special acts of 1871 and 1872 referred to in the majority opinion were not pleaded, and can not and ought not to be considered by the court, therefore, in the determination of this case. (Section 119 of the Civil Code.)

The taking of this patent by appellant's vendor was a fraud upon the Commonwealth; in direct contravention of the settled purpose and policy of the State in reserving its vacant lands in lots of 200 acres to actual and bona fide settlers for the purpose of induc-

ing citizens to become homesteaders. In my opinion every doubt and ambiguity should be resolved against the validity of any grant that is in violation of this manifest and wise purpose of the Commonwealth.

It is further my opinion that the judgment of the circuit court denying the validity of the Nickels patent was right; right in law, and right as being in support of a sound public policy.