LOCKARD et al. v. ASHER LUMBER CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1904.)

No. 1,304.

1. FEDERAL COURTS—STATE STATUTES—STATE DECISIONS.

Where an action in the federal court depends on the construction of a state statute providing for the sale of state lands, the federal court is required to adopt the construction placed on the statute by the highest court of such state.

2. SAME—PUBLIC LANDS—SALE—PATENTS—STATUTES—CONSTRUCTION.

Rev. St. Ky. c. 102. § 3, provides that any person who wishes to appropriate any vacant and unappropriated lands, on application to the county court of the county in which the same lies, paying at such price as the court may allow, not less than $5 per 100 acres therefor, may obtain an order of court authorizing him to enter and survey any number of acres of such land in the county, not less than 25 nor more than 200. Held, following the decisions of the Kentucky Court of Appeals, that such act did not preclude the survey of several tracts of 200 acres each by the same person, and that a patent for lands so surveyed was not void on its face because it conveyed more than 200 acres.

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

For opinion below, see 123 Fed. 480.

Morris & Newberger, A. E. Wilson, and Holt & Alexander, for appellants.

W. B. Dixon and Beckner & Jouett, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit in equity to quiet the title to a tract of land in Harlan county, Ky., containing 40,400 acres. Some of the defendants demurred and others answered. To portions of the answers the plaintiffs filed exceptions. The plaintiffs claimed under a patent issued by the state of Kentucky to C. O. Lockard, their devisor, on November 4, 1873. The patent was issued under chapter 102 of the Revised Statutes of Kentucky, which took effect July 1, 1852. The question raised by the demurrers and exceptions was

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

See Courts, vol. 13, Cent. Dig. §§ 957, 959.

whether a patent issued under that act for a greater quantity of land than 200 acres was or was not void on its face. The defendants below claimed it was. The court below, in an able opinion, upheld this claim, sustaining the demurrers and overruling the exceptions. From this an appeal has been taken.

Section 3 of the act in question, under which the patent was issued, provided as follows:

"Any person who wishes to appropriate any vacant and unappropriated lands, may, on application to the county court of the county in which the same lies, and paying at such price as the court may allow, not less than five dollars per hundred acres, therefor, obtain an order of court authorizing him to enter and survey any number of acres of such land in the county, not less than twenty-five nor more than two hundred.

"1. The party obtaining such order may, by an entry in the surveyor's book of the county, describing the same, appropriate the quantity of land it calls for in one or more parcels, as he may think proper.

"2. The surveyor shall survey the entries in the succession in which the same are made, bounding the same by plainly marked trees, stones, or stakes, noting where it binds on a watercourse, or the marked line of another survey, giving names. It shall be made in the presence of two disinterested housekeepers as chainmen, whose names must be placed at the bottom of the plat and certificate.

"3. Such survey must be made within two months from and after the date of the entry.

"4. A plat and certificate of the survey must be made out by the surveyor and recorded in his books, and the original thereof, and a copy of the order of the court under which it is made, must be deposited in the register's office within four months after the survey is made.

"5. A patent may issue on the survey within three months after a plat and certificate thereof, and a copy of the order are filed in the register's office.

"6. When a survey has been carried into grant, the register shall write across the face of the order on which the survey was made, 'satisfied,' and sign his name thereto.

"7. The legal title of the land shall bear date from the time of making the survey.

"8. None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent, made or issued under this chapter, shall be void so far as it embraces lands previously entered, surveyed or patented.

"9. A plat and certificate of survey shall be assignable, and the assignment thereof shall authorize a patent to issue thereon to the assignee.

"10. The register may receive plats and certificates of survey after the expiration of the time herein allowed for returning the same; but, in such case, the legal title shall take effect only from the date of the patent.

"11. No land shall be subject to appropriation under this chapter that has reverted to the commonwealth by escheat, or has been forfeited for an omission to list the same for taxation, or for failing to pay the taxes thereon, or which has been once patented and the title of the same has in any way become again vested in the commonwealth."

The construction of this statute—the ascertainment whether it does or does not prohibit the issue of a patent for more than 200 acres—is obviously a Kentucky question. The federal courts follow the rule laid down by Chief Justice Marshall in Polk's Lessee v. Wendal, 9 Cranch, 87, 97, 3 L. Ed. 665:

"In the cases depending on the statutes of a state, and more especially in those respecting titles to land, this court adopts the construction of the states, where that construction is settled and can be ascertained."

The statute has been before the highest court of Kentucky in six cases. Register v. Reid, 72 Ky. 103, decided October 21, 1872; Breathitt Coal, Iron & Lumber Company v. Strong, 51 S. W. 189, 21 Ky. Law Rep.

302, decided in 1899; West v. Chamberlain, 58 S. W. 584, 22 Ky. Law Rep. 687, decided in 1900; American Association, Limited, v. Innis, 60 S. W. 388, 22 Ky. Law Rep. 1196, decided in January, 1901; and Uhl v. Reynolds, Register, 64 S. W. 498, 23 Ky. Law Rep. 759, and Nickels v. Commonwealth, 64 S. W. 448, 23 Ky. Law Rep. 778, both decided in September, 1901.

The patent demanded in Register v. Reid appeared to be for an additional tract of 200 acres only, but, as developed in Breathitt, etc., Co. v. Strong, was ultimately issued for 154,800 acres, the patent in the latter case being the identical one issued because of the decision in the former. The patent in American Association, Limited, v. Innis covered 12,400 acres, that in Uhl v. Reynolds, 200,000 acres, and that in Nickels v. Commonwealth 34,800 acres. The patent before us was issued after the decision in Register v. Reid, and it is claimed, upon the faith of it, in accordance with the resultant practice of the register's office. Up to the time of the decision it was a doubtful question whether a person could purchase and obtain by patent more than 200 acres. Orders had been obtained and surveys made by the same person for more than 200 acres, and pending the decision acts had been passed in March, 1872, authorizing the issue in certain counties of patents upon such orders and surveys. This was, in effect, a legislative decision or declaration with respect to the question pending in Register v. Reid. The statute itself contains no inhibition against the obtaining by one person of several orders and surveys, nor any against the inclusion in one patent of several orders and surveys thus obtained. The inhibitions contended for are implied from other provisions and what is asserted to be the policy of the law. Obviously, the fundamental question was whether several orders and surveys could be obtained by the same person, for, if one person could obtain several orders and surveys, there would seem to be no reason why the state should not grant a patent covering them. What the state had a right to sell, it would seem to have the right to convey, and in one instrument. Polk's Lessee v. Wendal, 9 Cranch, 87, 95, 3 L. Ed. 665; Smelting Co. v. Kemp, 104 U. S. 636, 653, 26 L. Ed. 875. The statute authorizes any person who wishes to appropriate any vacant land to apply to and obtain from the county court an order authorizing him to enter and survey not more than 200 acres. This limits the order to 200 acres, but that is the extent of it. A subsequent paragraph provides that "a plat and certificate of survey shall be assignable, and the assignment thereof shall authorize a patent to issue thereon to the assignee." In view of the presence of this provision, the lack of any express inhibition, and the supposed policy of the act, the court held in Register v. Reid that there was no limitation on the number of orders the same person might obtain; in other words, no limitation on the number of acres a person might purchase from the state under this act. Respecting the policy of the law, the court said:

"This court knows judicially, moreover, that before the adoption of the Revised Statutes nearly or quite all of the lands of the state of much value for farming purposes had been appropriated, and that the chief value of the residue consisted in the timber and minerals they contained; and it is not certain that the prohibition contended for might not operate to prevent their appropriation

for those purposes, and tend to deprive the commonwealth of the revenue which they would yield in the hands of private owners." 72 Ky. 105.

And regarding the practice of the land officers, it is said:

"If, however, the meaning of the statute, so far as it involves the question under consideration, is so obscure or doubtful as to require a resort to other tests than those already mentioned for a solution of the difficulty, much weight is due to the fact that from the adoption of the Revised Statutes, over twenty years ago, until this controversy arose, the same construction which we adopt has, as we believe, been acquiesced in by the people, and acted upon by that department of the government having official duties to discharge under the law in relation to the appropriation of public lands." 72 Ky. 106.

But it may be and is urged that Register v. Reid only held that more than one patent for 200 acres might be issued to the same person, and not that a patent for more than 200 acres might be so issued. This is true unless the second proposition follows from the first. And, indeed, it is hard to understand why, in the absence of an express prohibition, one patent for 400 acres might not be issued if two patents for 200 each could. If the state could sell and grant to Lockard 40,400 acres, there would seem to be no reason why this grant should not be clearly expressed in a single instrument. Why require 202 patents, with all the accompanying trouble. expense, and confusion? As Judge Pryor pointed out in his dissenting opinion in Register v. Reid, the more patents and the more descriptions, the greater the liability to interference and confusion. Accordingly, what Register v. Reid practically decided was that a person may obtain as many orders, not exceeding 200 acres each, as he cares to buy, and unite them in one patent by proper surveys. Evidently, Judge Pryor knew this would be the effect of the holding, for he says:

"While this case now before us only involves the right to enter an additional 200 acres of land, I am well aware from the argument and agreed facts that it is but a test case, and that there are those who have surveyed thousands of acres now clamoring at the register's door for patents."

The case of Breathitt Coal, Iron & Lumber Company v. Strong, supra, decided 26 years after Register v. Reid, shows plainly what the effect of the holding was. This case involved the validity of a patent to Stephen G. Reid, issued June 15, 1872, for 154,800 acres, which excluded 25,000 acres "of patented and otherwise appropriated land, which is deducted from the calculation." The outer boundary was described by courses and distances, but the excluded land was not. Counsel presented the objection urged in this case that the patent was for more than 200 acres, but the court, in an opinion by Judge Paynter, sustained the validity of the patent, stating that the only question which merited consideration was whether the patent was void by reason of the failure to describe the excluded boundaries, and, commenting on certain cases, held it was not. The court below explained the neglect to discuss the question before us by saying that the patent involved was the very patent which the register had been directed to issue in Register v. Reid, and that, therefore, the question as to the invalidity of the patent on the ground that it covered more than 200 acres was treated as res adjudicata. But obviously the question was not res adjudicata, for the additional patent demanded in that case was for only 200

acres, and, if the court treated it as not meriting consideration, it was because the court had in view not only the technical, but the real and practical, holding in Register v. Reid. The court knew that, as a result of that decision, patents had properly issued not only to Reid, but to many others, for tens of thousands of acres in Kentucky, each covering more than 200 acres.

Following the Breathitt Case came the case of West v. Chamberlain, supra, decided in October, 1900. The patent in this case covered many thousands of acres. It was claimed it was void for uncertainty, because there were in fact no surveys on which the patent was based. The court below overruled these objections, and was sustained by the Court of Appeals. It does not appear that the question in the case before us was either presented or considered, but the court must have been aware that the patent was for many times 200 acres. It is said, however, there was an act passed in 1868, which made this patent, granted in 1855, good. But if, under the general law, the patent was palpably bad, and a special act alone saved it, certainly the court would have referred, in its opinion, to the special act.

The next case is that of the American Association, Limited, v. Innis, supra, decided in 1901. The land involved was situate in Bell county, and was patented in October, 1871. Sixty-two patents, each for 200 acres, were issued to Innis. The court below sustained these patents. It was sought in the Court of Appeals to have them held void on the ground they had been obtained fraudulently because the entries of the orders and surveys were in the names of fictitious persons, and the assignments to Innis forged; also, because the tract covered by the 62 patents was surveyed by laying out a base line and platting the patented tracts on this line. Both these contentions were overruled, the court saying that Bell county was not complaining of any fraud in the transaction, and the appellants were in no position to complain. The decision in Register v. Reid was referred to as controlling, the court saying:

"However much we might be inclined to dissent from the views expressed in that opinion as an original proposition, it must be regarded as settled law, as vast pecuniary transactions have been made on the faith of it, and any departure therefrom would involve in ruin many innocent purchasers of vacant land taken up exactly as it was in that case and this one." 60 S. W. 391. 22 Ky. Law Rep. 1201.

In the case of Uhl v. Reynolds, Register, supra, the validity of the Cheever patent, issued June 14, 1872, for land in Clay county, was sustained. This patent, as appears in the dissenting opinion of Judge O'Rear, was for 200,000 acres. In sustaining it, the court said:

"In the brief filed by the very able counsel for appellee it is first contended that under the statute as it existed at the time this survey was made not more than 200 acres of land could be appropriated by a single individual, referring to section 3 of chapter 102 of the Revised Statutes, which was in force at the time this survey was made; and that for this reason the patent was against the public policy of the state and consequently void. In response to this contention it may be said that it was held in the case of the Register v. Reid, 9 Bush, 103, by this court, in construing this identical statute, that the same person could purchase and patent several orders of the county court, each for 200 acres or any less number; and, whilst this opinion has been more or less criticised by the profession, it has been uniformly followed by this court in

numerous subsequent decisions, and vast property rights have been acquired on the faith of it, and any departure therefrom at this late day would involve in ruin many innocent purchasers of vacant land taken up as it was in this case." 64 S. W. 499, 23 Ky. Law Rep. 761.

The court goes on to point out that the validity of the Cheever patent does not rest alone upon the construction of the statute in Register v. Reid, but is sustained by the acts approved March 9, 1872 (1 Acts 1871–72, p. 562, c. 487), and March 27, 1872 (1 Acts 1871–72, p. 74, c. 827), which we have referred to. There is a dissenting opinion in this case by Judge O'Rear, who begins by saying:

"It may be noted at the outset that the majority opinion finds no merit in the acts in question to uphold appellant's claim to 320 square miles and more of the public lands of this state. It rests solely on the fact that it is supposed previous decisions of this court have already settled the law involved in the case, and therefore it is but following the path heretofore made by the court that the result is reached."

He then examines the case of Register v. Reid, and points out that all that case authorized was the issue of more than one patent for 200 acres to the same person, and, taking up the acts of March 9 and 27, 1872, calls attention to the fact that they were passed while the case of Register v. Reid was pending, and before it was decided, and only authorized what Register v. Reid subsequently held, namely, that the same person might obtain more than one order for 200 acres, and have the same surveyed and patented. Neither authorized a warrant to be granted, nor a survey made, nor a patent issued for more than 200 acres. We are disposed to agree with Judge O'Rear's construction of these two acts. If the holding in Register v. Reid did not warrant a patent for more than 200 acres, these acts did not. Judge O'Rear concedes that under Register v. Reid and these acts Cheever was entitled to 1,000 patents of 200 acres each, provided he had entered and surveyed 1,000 separate tracts under his 1,000 orders; but he points out that what happened was this:

"In the first place, the land was never actually surveyed before the patent issued. One assuming to be a county surveyor (but who was not, and was not even a de facto officer), sitting in his office, by protraction upon a private map of the county, without marking a tree (merely adopting one marked for another line), platted one thousand 200-acre tracts upon an imaginary base line. Upon this proceeding Cheever obtained one patent for 200,000 acres." 64 S. W. 503, 23 Ky. Law Rep. 767.

Towards the close of his opinion the judge says:

"The majority opinion stakes its warrant upon the suggestion that it is the fixed law of this state since the date of Register v. Reid, supra, that patents such as the one herein upheld are valid." Page 769, 23 Ky. Law Rep., page 504, 64 S. W.

And he concludes with a strong assault upon the premises and the policy of the decision, ending by saying he is in favor of overruling it.

It is clear from a reading of the opinion and the dissenting opinion in this case that the question before us was considered and passed upon, and that the highest court of Kentucky held, following Register v. Reid and other cases, that a patent for 200,000 acres could be issued to a person holding orders covering that number of acres, although no actual surveys of the separate and distinct tracts were made. It will

not do to say that the decision turns upon the acts of March, 1872, and that the references to Register v. Reid were dicta. It is obvious that it was the holding of the court in Register v. Reid which was controlling. The dissenting judge showed his appreciation of this when he ended his opinion by asserting his readiness to join in overruling that case.

In Nickels v. Commonwealth, supra, a patent for 34,800 acres in Letcher county, issued May 16, 1873, was upheld. The patent was based on 174 warrants for 200 acres each. It was insisted there were no separate surveys of the several tracts, that only the entire boundary was surveyed, and a plat was made by running a base line and platting the land in blocks of 200 acres. The court, sustaining the patent, said:

"The arguments that are so earnestly pressed upon us by appellee's distinguished counsel and elaborated in the dissenting opinion of Judge O'Rear in the case of Uhl v. Reynolds were forcibly stated by Judge Pryor in his dissenting opinion in Register v. Reid, 72 Ky. 103, and for us now to take this view, and hold a patent issuing for more than two hundred acres to be void, would be for us now substantially to adopt the rule urged by Judge Pryor in that dissenting opinion, notwithstanding the fact that this court has sustained numbers of patents under this statute, similar to the one before us, on the authority of the majority opinion in that case. There is no provision of law inhibiting the inclusion of several surveys in one patent. It being settled that one person might at the same time make two surveys, each of two hundred acres or more, at his election, the land office issued patents upon these surveys including in one grant as many surveys as were desired at the request of the patentee. When there was no statute forbidding this, and such patents have time and again been recognized by this court, after large sums of money have been invested on the faith of this practice of the land office and these decisions of this court, it would be, in our judgment, a departure from well-settled legal principles for us now to declare such patents invalid." 64 S. W. 449, 23 Ky. Law Rep. 780.

Judge O'Rear dissented on the grounds given in Uhl v. Reynolds, Register, and, in addition, called attention to the fact that there never was an actual survey of the land embraced in the patent, and never an entry of the respective warrants for 200 acres.

It is stated that counsel for the appellees in the case before us filed a petition in the Court of Appeals of Kentucky for a modification of the opinions in the Uhl and Nickels Cases, calling attention to the case at bar, then pending in the lower court, stating the validity of the Lockard patent depended solely upon the meaning of the Revised Statutes, there being no special act applying to Harlan county, and asked the modification on the ground that, if the opinions were adhered to, they would conclude the questions raised in the Lockard case. But the court adhered to its statement that there was no provision of law inhibiting the inclusion of several surveys in one patent, and that in issuing a patent covering as many surveys as were obtained the land office but followed a practice supported by the rulings of the Supreme Court of the United States in Polk's Lessee v. Wendal, 9 Cranch, 87, 3 L. Ed. 665, and Smelting Co. v. Kemp, 104 U. S. 648, 26 L. Ed. 875. Whatever view we might be disposed to take of the proper interpretation of this act, with respect to the matter involved in this case, if it were before us as an original question, our examination of the foregoing cases decided by the Court of Appeals of Kentucky constrains us to the conclusion that that court, in the exercise of its rightful authority, has

settled its construction, and settled it in favor of the validity of the patent before us.

The judgment of the lower court is therefore reversed, and the case remanded for further proceedings not inconsistent with this opinion.