## Speyer, et al v. McNamara's Admr., et al.

(Decided October 12, 1911.)

### Appeal from Fayette Circuit Court.

1.  Wills—Construction of.—A will of the husband giving to the wife, his "entire estate of all kinds to be used and enjoyed by her as she may deem best for the benefit of her and my children, giving her absolute power to sell, dispose of and convey all or any part of said property as she may see fit and proper, leaving to her judgment and discretion the disposition of everything I may possess" vested the widow with the fee.

2.  Judicial Sales—Description of Property.—When the judgment described the property that is to be sold, and the purchaser buys the property so described, he is only entitled to the property described in the judgment although he may have believed that he was getting some other property in connection therewith.

3.  Suit to Settle Estate and Distribute Proceeds—Pleadings and Evidence.—In a suit by an executor for the purpose of settling an estate, and for a sale of the property for distribution as directed under the will, it is not necessary that evidence should be taken to show that the property was not divisible.

J. S. BOTTS, MATTHEW WALTON for appellants.

H. E. ROSS, GEORGE C. WEBB for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming as to Appellant Bond and reversing as to Appellant Speyer.

Matthew McNamara in his will, probated in July, 1887, appointed his wife, Bridget McNamara, his executrix, and in devising to her all of his estate used the following language:

"It is my will that my just debts be paid, after which I give to my wife, Bridget McNamara, my entire estate of all kinds, to be used and enjoyed by her as she may deem best for the benefit of her and my children, giving her absolute power to sell, dispose of and convey all or any part of said property as she may see fit and proper, leaving to her judgment and discretion the disposition of everything I may possess."

Bridget McNamara died testate in 1908, and in this suit brought by John J. Riley the executor to settle her estate and for distribution of the proceeds in accordance with the will, the real estate was ordered to be and was sold, and some parts of it bought by appel-

lants Speyer and Bond. Having doubts as to whether the decree and orders of the court invested them with a fee simple title in the property purchased, they filed exceptions to the report of sale, which were overruled, and thereupon they prosecuted this appeal for the purpose of determining whether or not they obtained a good title to the property purchased.

The first question presented involves the nature of the estate that Bridget McNamara took under the will of her husband, Matthew McNamara. It is suggested by counsel for appellants that the will of Matthew McNamara is subject to four constructions. First: That it invested Mrs. McNamara with a life estate, with remainder in fee in equal shares to her children. Second: That she took a joint estate with her children. Third, That she took the legal title to the estate in trust for the benefit of herself and children, with power to sell for the benefit of herself and children, and Fourth: That she took a fee simple estate. In support of these various constructions that it is said might be placed upon the will, our attention is called to a number of cases decided by this court, in some of which wills somewhat similar have been construed to vest in the widow a fee, in others a life estate, in others a joint estate and in yet others a trust estate. The fact that it is a rare thing to find two wills exactly alike easily accounts for the difference in the construction of these instruments. In every case when it can be done without violence to settled rules of construction or statutory provisions, the court endeavors to ascertain from the will the intention of the testator and to give to the will such a construction as will carry out this intention. As there is no statutory objection to construing this will so as to give the widow a fee in the estate devised, and no decision of this court forbidding it, we very readily adopt the construction that invests her with this character of estate, because that seems to have been the purpose of the testator. After the payment of his debts, he gave to her his entire estate to be used and enjoyed by her as she might deem best, with the absolute power to sell, dispose of and convey all or any part of it that she might see fit and proper leaving in the language of the testator "to her judgment and discretion the disposition of everything I may possess." It will be seen that in three distinct forms of expression the testator de-

vised to his wife with full power of disposition his en-
tire estate.   It is true that the will provides that the
estate is "to be used and enjoyed by her as she might
deem best for the benefit of her and my children," but
this language was not intended to limit in any manner
the estate given to the wife or her power of control and
disposition over it.   It was to be used and enjoyed by
her as she might deem best for the benefit of herself
and the children.   To her was left the manner in which
it should be used and enjoyed, and to her was given the
uncontrolled discretion to use it as   she   might   deem
best.   It is apparent from almost every word in the in-
strument that the testator had unlimited confidence in
the good judgment and motherly instincts of his wife,
and that he intended that she should possess without
limitation full authority over all the estate that he left.
We find no expression in this will from which it can
be fairly inferred that the testator only intended his
wife to have a life estate or a joint estate with her
children, or a trust estate for the benefit of herself and
children.   And to give to this will an interpretation that
limited in any manner the estate devised to the wife
would do violence to the more than once expressed in-
tention of the testator as found in his last will.  Clay v.
Chenault, 108 Ky., 77; McCullough v. Anderson, 90 Ky.,
126; Pedigo v. Botts, 28 Ky. L. R.. 198.   As Mrs. Mc-
Namara took the fee in the estate she had the right to
dispose of it by will.

The eighth exception is based on the following state
of facts: It appears that in December, 1889, Bridget
McNamara conveyed one parcel of the real estate de-
vised to her by her husband and purchased by appel-
lants at the decretal sale to her mother, Bridget Wil-
liams, who died intestate in 1901, prior to the death of
Bridget McNamara, leaving four children, viz:   Brid-
get, James, Mary Sexton, and Catherine Sullivan.   To
the four children her property descended in equal por-
tions.   After the death of her mother, Bridget Mc-
Namara purchased the interest of her brother James;
and after her death the beneficiaries under her will pur-
chased the interest of Mary Sexton, and the interest of
two of the children of Catherine Sullivan, who died in-
testate in 1902, leaving four children.   Two of the child-
ren of Catherine Sullivan have never conveyed their in-
terest, nor were they parties to this suit.   The question

raised by the exception is—do the two children of Catherine Sullivan—Mollie Sullivan and Ella Sinclair—yet own an undivided one-eighth interest in this piece of property. In answer to this exception the executor of Bridget McNamara set up in pleading and affidavit, that shortly after the death of Bridget Williams in 1891 Bridget McNamara purchased the interest of her brothers and sisters, including Catherine Sullivan, in the estate descended to them from Bridget Williams, although the deed was never recorded, and that from 1892 up to the date of her death Bridget McNamara exercised full control and ownership over this property and listed the same for taxation each year from 1890 and paid the taxes thereon. It is therefore insisted that as Bridget McNamara held openly, adversely and continuously for more than fifteen years prior to her death the property in question this adverse holding invested her with the possessory title to it and that the two children of Catherine Sullivan cannot now assert any claim in or interest to the property. We do not find in the record any competent evidence that Bridget McNamara ever purchased or that there was ever conveyed to her the interest of Catherine Sullivan in this property, nor does the record show by competent evidence the adverse holding of Bridget McNamara, or at all the ages of the two children, Molly and Ella Sinclair. We do not think the ex parte affidavits are at all sufficient to divest the two children of Catherine Sullivan of their interest in this property. It may be, as stated by counsel, they have no interest and that their mother before her death conveyed her interest by deed that was never put to record, or their claim is barred by limitation, but if so, these facts should be shown by deposition. We think this exception is well taken.

Another exception is based upon the fact that at one end of a lot purchased by Speyer there was an alley-way adjoining the lot and forming a part of the boundary, and over this alley-way there had been built certain rooms forming part of the property which were owned by Bridget McNamara at the time of her death. It is said in argument that it was intended under the judgment of sale to sell this space and the rooms over the alley in connection with and as a part of the property sold, but this was not done, although the appellant purchaser thought when he bid that he was obtaining

the space over the alley together with the remainder of
the property.  The judgment directing a sale of this
particular piece of property describes it as:

"Beginning in the center of an alley —— feet from
the corner of Broadway and Main streets, thence with
Broadway in a southerly direction 26 feet in the line of
B. McNamara, thence in a westerly direction along the
line of said McNamara prolonged until it reaches Mc-
Calla's line 87 feet 9 inches, more or less, thence in a
northerly direction and with the said line of McCalla's
26 feet to the center of an alley, thence in an easterly
direction along the center of said alley 87 feet 9 inches,
more or less, to the beginning; said alley is reserved
for the use in common of B. McNamara and those
claiming under her, and of J. E. Roberts and those
claiming under him."

The report of sale sets out the purchase of Speyer
of the precise property described in the judgment. We
do not consider this exception well taken.  The judg-
ment describes the property specifically to be sold and
makes no mention of rooms or space over or in the al-
ley.  The purchaser got what the judgment directed
should be sold, and this is all he was entitled to.  It
may be noticed, however, that the executor of Mrs. Mc-
Namara has since the sale conveyed to the purchaser
whatever interest Mrs. McNamara had in the alley and
the rooms over it, and this conveyance, which was en-
tirely independent of the judgment, gives to the pur-
chaser whatever interest Mrs. McNamara had.

Another exception may be stated as follows—Mary
McNamara, one of the devisees under the will of her
mother, Bridget McNamara, who died before the in-
stitution of this action, made a last will, by which she
devised all of her interest in her mother's estate to her
sister, Anna McNamara, and appointed her executrix.
Anna McNamara, as executrix, was not made a party to
the action as she should have been, but this defect was
cured by a pleading filed by her in which she entered
her appearance and agreed to all the steps taken in the
case.

Other exceptions raise the question that the peti-
tion is not sufficient to authorize the relief granted and
that no proof was taken to support the averments of
the pleading.  The suit was brought by the executor for
the purpose of settling the estate of the testatrix and

for a sale of the property for distribution among the devisees as directed in the will. The petition is sufficient and we do not think it is necessary that any proof should have been taken to show that the property was not divisible, as it was sold in obedience to the direction contained in the will to carry out its purposes.

All of the exceptions were properly overruled, except the one relating to the failure to bring into the action the two children of Catherine Sullivan. This exception should have been sustained.

Wherefore the judgment upon the appeal of Bond is affirmed, and upon the appeal of Speyer is reversed, with directions to proceed in conformity with this opinion.