## Miller, et al. v. Breathitt Coal, Iron & Lumber Co.

(Decided February 21, 1913.)

### Appeal from Breathitt Circuit Court.

1.  Patents—Validity—Collateral Attack—Ordinarily the validity of a patent cannot be collaterally attacked; there are, however, some exceptions to this general rule, as where the patent is void upon its face, or has been issued in contravention of a statute which declares that issuance of the patent under the circumstances prohibited shall render it void, or where it is issued under circumstances which the statute declares to be fraudulent.

2.  Patents—Entry Upon Vacant Lands—Extent of Survey.—Under section 3, of chapter 102, Revised Statutes, the same person could obtain orders of the County Court and enter and survey any number of acres of vacant and unappropriated lands, not less than 25 nor more than 200 acres in each survey. The language of the

statute in limiting each order to a survey of not less than 25 nor more than 200 acres, does not import a prohibition on each person applying for orders for vacant lands from so obtaining authority to enter more than 200 acres, but merely a restriction of the power of the county courts to authorize any one entry of more than 200 acres or less than 25 acres.

3. Patents—Entry and Survey of Vacant Lands—There was no provision of the statute in question which prevented the inclusion of several or any number of surveys in one patent provided each was obtained under an order of the county court and contained not less than 25 nor more than 200 acres. Nor is such a patent invalidated by the failure of the surveyor to actually survey each 200 acre parcel appropriated under the respective county court orders. If the quantity of each was correctly ascertained by him and shown by his report and plat of survey and accompanying certificate, after he surveyed and established the boundary of the whole, this was a substantial compliance with the statute.

4. Patents—Ejectment—Burden of Proof.—In an action of ejectment in which the plaintiff asserts title under a patent that contains exclusions, the burden is upon him to show that the land claimed by him lies outside of the excluded land; and such proof having been sufficiently made by the appellee in this case, it was entitled to recover.

W. H. BLANTON, S. H. PATRICK, and M'QUOWN & BECKHAM, for appellants.

J. J. C. BACH, GRANNIS BACH, and HAZELRIGG & HAZELRIGG, for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee corporation, Breathitt Coal, Iron and Lumber Company, brought this action in the court below, against S. L. Stacy, John Miller, Woodson Miller, R. B. Allen and the appellant, George Mullins, seeking to recover the possession of about 200 acres of land constituting a part of a survey of 154,800 acres lying in Breathitt and an adjoining county, of which appellee claimed to be the owner, but the defendants were alleged to be wrongfully in the possession of; and asking damages for its detention and the cutting of timber therefrom by the latter.

It was alleged in the petition that the 154,800 acre survey, which includes the 200 acres in controversy, was granted to one Stephen G. Reid by the Commonwealth of Kentucky, by patent dated June 15, 1872, and that the title thereto, by several mesne conveyances, duly executed, delivered and recorded, became vested in appellee; that at the time of the issuance of the patent by the Com-

monwealth of Kentucky to Stephen G. Reid, the entire survey of land embraced within the boundary thereof was vacant and unappropriated, except 25,800 acres, expressly excluded therefrom by the terms of the grant, leaving 129,000 acres, to which Stephen G. Reid, and appellee as his remote vendee, acquired the fee simple title; and that the 200 acre tract of land wrongfully held by the defendants and upon which they did the cutting of the timber complained of, though embraced in the Reid patent and appellees' deed, was claimed by the defendants under an alleged patent claimed to have been issued to one Reynolds, their remote vendor, by the State of Virginia, May 18, 1786, which, it was alleged, does not cover the land. By an amended petition appellee set out the boundary of each of the surveys excluded by the Reid patent.

Shortly after the institution of the action, S. L. Stacy, one of the defendants therein, filed an answer disclaiming any ownership of the 200 acres of land or any part thereof, and the action was dismissed as to him. The defendants, John Miller and R. B. Allen, made no defense to the action, but an answer was filed by Woodson Miller and George Mullins, in which appellees' title to the land embraced in the Reid patent was denied, but the inclusion of the 200 acres of land in controversy within its boundary was not denied. It was, however, alleged in the answer that the Reid patent was void, because issued in violation of a statute then in force.

The answer also set out the boundary of the 200 acres of land claimed by the defendants and alleged their possession thereof at the time of the institution of the action. After the filing of the answer Woodson Miller died intestate, survived by his widow, Polly Miller, and several children, some of whom were infants; and, by an amended petition, the widow and children were made defendants, the action revived as to them and a guardian ad litem appointed to defend for the infants, whose report appears in the record. Thereafter the widow and children and Mullins, filed a joint amended answer, which made more specific the averments of the original answer and pleaded the statute of limitations, based upon their alleged actual and adverse possession of the 200 acres of land for more than fifteen years before the institution of the action; and in the prayer of the answer, it was asked that their title to the 200 acres of land be quieted.

After the filing of replies to the answer and amended answer, which controverted the material allegations of each, the case was transferred to the equity docket, and, following the taking of proof by the parties, the court rendered a judgment declaring appellee the owner of the 200 acres of land in controversy as a part of the Stephen G. Reid patent, and awarded it a writ of possession for the same. It was further adjudged that certain sale bonds amounting to $500.00, executed for the timber cut by Mullins and Woodson Miller from the land, and which the court had previously ordered to be sold, be paid to appellee. From that judgment Mullins and the widow and heirs at law of Woodson Miller, have appealed.

The appellants wholly failed to prove title to any part of the 200 acres of land described and claimed in their answer, or that it was covered by the Reynolds' patent of 1786. They also failed to prove such actual or adverse possession of the land as would enable them to rely on the statute of limitations. Indeed, the only possession shown by their evidence was that of about two years on the part of Woodson Miller, and less than a year on the part of the appellant, Mullins. There was, it is true, some vague proof of a previous possession of eight or nine years by Elijah Miller and John Miller, from whom appellants claim, in some unexplained way, to have acquired the land in controversy, but such possession was not shown to have been continuous, or that it was connected with the brief possession held by Woodson Miller and Mullins.

On the other hand, the evidence in appellees' behalf amply proved that the two hundred acre tract in controversy is covered by the Reid patent and not included in any of the lands excluded by that patent. In fact, appellants make no pretense of entry by color of title, but rely upon the claim of their answer, that the Reid patent was issued "in violation of a statute at that time in existence prohibiting a patent from being issued to one person, for more than 200 acres of land in the same county, in the same year."

It is argued for the appellants that the patent is void, under section 3, chapter 102, Revised Statutes, then in force, because the combination of a number of surveys of 200 acres each, could not be legally included in a single boundary and one patent; and that as that was done in the obtention of the Reid patent, the Register of the

Land Office exceeded his authority in issuing it, or, to use the language of one of the counsel, he was "without jurisdiction," to issue the patent. Upon this premise it is further argued by counsel that the patent is open to a collateral attack.

It is true that Combs, the deputy surveyor, did not actually make a separate survey under each of the 645 orders of entry granted, by the county court. He did, however, after a survey and fixing of the boundary of a sufficiency of the vacant lands subject to entry and appropriation, include therein the quantity which by a mathematical calculation he found necessary to make, if divided up, 645 parcels of 200 acres each, besides the exclusions. We are not advised that it is beyond the skill of a competent surveyor to correctly accomplish the result achieved by Combs; and of the mathematical correctness of the result we have no doubt, for it is not claimed in this case, nor has it been claimed in any of the several cases, involving this patent, coming before this court, that its boundary contains any more or less than 129,000 acres of land, or what will amount to 645 parcels of 200 acres each, after excluding the surveys amounting to 25,800 acres, excepted by the patent.

After reaching the result stated, Combs made a plat showing the boundary of the entire quantity of land and divided it into 645 parcels of 200 acres each, made a plat of each parcel and placed on each the number of the county court order it was intended to be entered under. These plats, and accompanying certificates, or copies thereof, were delivered to S. G. Reid after they were recorded in the Surveyor's book as required by law. We gather from the record that copies of these plats or surveys made by Combs, were filed with the Register, together with the certificate appearing on page 116 of the record. While this certificate did not set out the boundary of each of the 645 surveys, it shows that they were made by Combs for Reid February 17, 1872, and were all embraced in the boundary of two pages that followed. We agree with the contention of appellees' counsel that this certificate must be presumed to be a surveyor's combination of the courses and distances of his accompanying detailed surveys.

The Reid patent is not void on its face. In Register v. Reid, 9 Bush, 103, in which apparently the same patent now attacked, was involved, we held that any person

may obtain an order of the county court to enter and survey any number of acres of vacant and unappropriated lands, not less than twenty-five nor more than two hundred acres, as allowed by section 3, chapter 102, Revised Statutes; and that authority to the same person to make more than one entry and survey of two hundred acres is not prohibited by the statute. After quoting the statute the opinion says:

"Does this enactment import a prohibition on each person applying for orders for vacant lands from so obtaining authority to enter more than two hundred acres, or merely a restriction of the power of the county courts to authorize any one entry of more than that quantity, or less than twenty-five acres? The circuit court, giving to the statute the construction last indicated, awarded the writ of mandamus against the register, and a careful consideration of the question constrains us to concur in that decision. While the statute in effect forbids the county courts to sell more than two hundred acres of land by any one order, it certainly, in providing that 'any person' may purchase vacant lands, lays no express restraint on any one from obtaining more than one order, if not more than two hundred nor less than twenty-five acres; and if the supposed prohibition can be deduced from the statute at all, it must be by implication only."

The opinion then calls attention to the fact that its interpretation of the statute had been acquiesced in by the courts and the people, and acted upon by that department of the State gavernment having charge of the disposition of vacant public lands, from the adoption of the revised statutes, which made it unwise to change or modify the rule.

It will thus be seen that the validity of the Reid patent is not affected by the fact that more than one order of entry and survey for vacant land was obtained by Ried at the same time, or that six hundred and forty-five of such orders were procured by him, as none of them was for less than twenty-five or more than two hundred acres. Nor do we think its validity affected by the failure of the deputy surveyor to actually survey or run and set out the boundary of each two hundred acre parcel appropriated under the respective county court orders, as it appears that the quantity of each was correctly ascertained by the surveyor after he fixed the boundary

of the whole and is shown by his plats and report of survey.

Ordinarily, the validity of a patent cannot be collaterally attacked; there are, however, some exceptions to this general rule, as where the patent is void upon its face, or has been issued in contravention of a statute, which *declares that issuance of the patent under the circumstances prohibited, shall render it void, or where it is issued under circumstances which the statute declares to be fraudulent.* Frazier v. Frazier, 81 Ky., 138; Jennings v. Whitaker, 20 Ky., 50; Clerk v. Jones, 55 Ky., 25; Bledsoe's Devisees v. Wells, 7 Ky., 329; Taylor v. Fletcher, 46 Ky., 80; Marshall v. McDaniel, 75 Ky., 378; Bryant v. Kentucky Lumber Co., 144 Ky., 775.

There are also authorities which hold that the failure to make, as required by law, the survey upon which the patent is issued, or the failure to make the survey at all, does not bring the patent within any exception to the above rule. Kain v. Flynn, 34 Ky., 501; American Land Asso., Ltd., v. Innis, 109 Ky., 595. In the latter case it is in the opinion said, with respect to the provisions of the Revised Statutes, *supra,* under which this patent was issued:

"In construing these provisions of the statute, in Register v. Reid, 9 Bush, 103, it was held that the same person could purchase and obtain any number of orders of the county court for surveys, each to be for not exceeding two hundred acres, in the face of exactly the same contention that is made here—that the object of the statute was to invite actual settlement and occupancy of vacant lands, which would be defeated by permitting one person to make more than one entry for the use of one occupant. However much we might be inclined to dissent from the views expressed in that opinion as an original proposition, it must be regarded as settled law, as vast pecuniary transactions have been made on the faith of it, and any departure therefrom would involve in ruin many innocent purchasers of vacant land taken up exactly as it was in that case and·this one. More than eighteen years after the issuance of these patents to appellees, appellants bought up most of the old patents embraced in the Innis grants; and with a full knowledge of the location of the Innis patents, having an accurate survey of them by their own engineer, as well as of the older patents purchased by them, they

took out blanket patents covering the whole territory, previously pre-empted by the Innis', with a design to take advantage of supposed defects in the location and issuance of the patents. . Under this state of facts appellant cannot appeal to the doctrine of 'clean hands' in a court of equity for the purpose of cancelling patents issued long prior to their claim.  *  *  *  *  Besides it is settled law that the validity of a patent cannot be inquired into in a collateral proceeding, unless the patent is void upon its face, or has been issued under such circumstances as the statute declares to be fraudulent.  *  *  *  *  Another point relied on is that appellees could not acquire title by merely surveying a base line and then platting the entries on this line. This is not a new suggestion. The identical question was raised and construed in the case of Kane v. Flynn, 4 Dana, 499. It was held that a patent could not be questioned collaterally on this ground or parol evidence admitted to show the fact.''

To the same effect are the opinions in the following cases decided by this court: Uhl, Use, etc., v. Reynolds, Register, etc., 23 R., 759; W. H. Nichels, etc., v. Commonwealth, 131 Ky., 75; Steel v. Bryant, etc., 132 Ky., 569.

In W. H. Nickels v. Commonwealth, *supra,* we said:
"There is no provision of law inhibiting the inclusion of several surveys in one patent; it being settled that one person might at the same time make two surveys each of two hundred acres or more at his election, the land office issued patents upon these surveys including in one grant as many surveys as were desired at the request of the patentee. This practice followed the ruling of the United States Supreme Court by Chief Justice Marshall in Polk's Lessee v. Wendell, 9 Cranch, 87, which was approved in Smelting Co. v. Kemp, 104 U. S., 648. When there was no statute forbidding this and such patents have been recognized by this court, after large sums of money have been invested on the faith of this practice of the land office and these decisions, it would be, in our judgment, a departure from well-settled legal principles for us now to declare such patents invalid.''

Manifestly in an action of ejectment in which the plaintiff asserts title under a grant that contains exclusions, the burden is upon him to show that the land claimed by him lies outside of the excluded land; and this burden is shouldered when the plaintiff shows by

a surveyor that he is familiar with the exterior lines of the patent and the water courses that flow through it, and, by an inspection of the records of the land office at Frankfort, he is able to determine or locate the patents that have been issued for land within a territory embraced in the exterior lines of the territory in question; that he examined the records, obtained copies of all the patents and that none of them conflict with the land sought to be recovered.

Such proof was amply made by the appellee in this case through Gibson, a skilled surveyor, to say nothing of the testimony of Combs, and there is no evidence appearing in the record contradicting Gibson's testimony, or that of Combs. In view of his showing of title appellee was entitled to recover. Steel v. Bryant, 132 Ky., 569; Caddell v. Eagle Coal Co., 144 Ky., 396. In Bowling v. B. C. I. & L. Co., 134 Ky., 249, a case which involved this precise question, under this patent, we held that where a plaintiff in a suit to restrain a trespass on land, showed that there were numerous prior grants, within the exterior lines of the patent, under which he claimed, and that none of the prior grants included the land in controversy, which was within the exterior lines of the patent, plaintiff was entitled to recover.

Our examination of the cases relied on by counsel for appellant convinces us that they do not militate against the conclusions herein expressed.

The judgment is affirmed.